641 A.2d 1154

**Allen WINDRIM, Appellee,**

v.

**NATIONWIDE INSURANCE COMPANY, Appellant.**

Supreme Court of Pennsylvania.

Argued April 5, 1993.

Decided May 16, 1994.

Rearguments Denied June 29 and July 14, 1994.

Gregory F. Lepore, Lansdale, for Nationwide.

Edwin P. Smith, Philadelphia, for A. Windrim.

Peter J. Hoffman, Philadelphia, for amicus—defendant Inst.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION

NIX, Chief Justice.

Nationwide Insurance Company ("Nationwide") appeals from the Order of the Superior Court affirming the Order of the Court of Common Pleas compelling uninsured motorist arbitration and invalidating an automobile insurance policy provision which excludes uninsured motorist benefits to a person operating his own uninsured automobile at the time of the accident. We granted allocatur in this case to determine whether public policy precludes the enforcement of such a provision. For the reasons that follow, we reverse and hold

that the aforementioned provision is a valid and enforceable exclusion under Pennsylvania law.

Appellee, Allen Windrim, was injured as a result of a motor vehicle accident on December 3, 1989. Windrim has alleged, and Nationwide has denied, that the accident was the result of the negligence of an unidentified hit-and-run driver. At the time of the accident, Windrim was the sole owner and operator of his uninsured automobile. Windrim subsequently sought uninsured motorist coverage from Nationwide contending that he was insured pursuant to his mother's policy with Nationwide because he was a relative residing in his mother's household. Nationwide denied coverage based upon an exclusionary provision in Windrim's mother's policy which provides in pertinent part:

This Uninsured/Underinsured Motorists insurance does not apply as follows:

. . . .

4. It does not apply to bodily injury suffered while occupying or from being hit by a motor vehicle owned by you or a relative living in your household, but not insured for Uninsured or Underinsured Motorists coverage under this policy.

Record at 13a.

Windrim filed a Motion to Compel Uninsured Motorist Arbitration contending that the foregoing provision was invalid under the Uninsured Motorist Act.[1] Nationwide filed an

1. Act of Aug. 14, 1963, P.L. 909, § 1, amended Dec. 19, 1968, P.L. 1254, No. 397, § 1 (codified as amended at 40 P.S. § 2000). Section 2000(a) provides:

No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death therefrom. . . .

answer, new matter, and a counterclaim requesting that the Court of Common Pleas enter a declaratory judgment against Windrim on the issue of the validity of the provision in question.

The court entered an order granting Windrim's Motion to Compel Arbitration and denying Nationwide's counterclaim for declaratory relief. It also declared the exclusionary provision invalid based on *Bankes v. State Farm Mut. Auto. Ins. Co.*, 216 Pa.Super. 162, 264 A.2d 197 (1970). In *Bankes*, the Superior Court struck down a similar exclusionary provision on the ground that it was repugnant to the Uninsured Motorist Act. The *Bankes* decision was based on the Superior Court's examination of the legislative history of the Act which revealed that the legislators expressly rejected an exclusionary provision very similar to the one at issue in that case.

On appeal to the Superior Court, Nationwide argued that the trial court erroneously relied on *Bankes* because the Motor Vehicle Financial Responsibility Law [2] ("MVFRL") was enacted after the Uninsured Motorist Act and the *Bankes* decision. *Windrim v. Nationwide Mut. Ins. Co.*, 412 Pa.Super. 155, 158, 602 A.2d 1356, 1357 (1992). Nationwide maintained that the legislative intent behind the MVFRL was to prevent uninsured motorists from using public highways by denying them insurance benefits. *Id.* According to Nationwide, the enactment of the MVFRL represented a change in legislative intent and policy from that underlying the Uninsured Motorist Act and, therefore, the exclusionary provision in Windrim's mother's policy was valid in light of this change. *Id.* at 158, 602 A.2d at 1357–58.

The Superior Court disagreed with Nationwide's contentions and found "no change in the legislative intent underlying the Uninsured Motorist Act to that underlying the MVFRL. The legislative intent under both [was] to ensure [that] own-

40 P.S. § 2000(a).

**2.** Act of Feb. 12, 1984, P.L. 26, No. 11, § 3 (codified as amended at 75 Pa.C.S. §§ 1701–1799.7, repealing the No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, §§ 101–701, previously codified at 40 P.S. §§ 1009.101–1009.701).

ers/operators of uninsured vehicles receive uninsured motorist benefits." *Id.* at 159–60, 602 A.2d at 1358. The court concluded that its holding in *Bankes* still controlled and consequently held the exclusionary provision invalid.

Judge Popovich dissented from the majority and indicated that his "review of the MVFRL disclose[d] that it [was] silent on the issue of whether the operator of uninsured vehicle may recover uninsured motorist benefits under a policy applicable to another vehicle owned by the driver or a relative residing with the driver." *Id.* at 160, 602 A.2d at 1359 (Popovich, J., dissenting). In addition, Judge Popovich found the reasoning of the Court of Appeals for the Third Circuit to be very persuasive in the factually similar case of *Nationwide Mut. Ins. Co. v. Hampton*, 935 F.2d 578 (1991). *Id.*, 412 Pa.Super. at 161, 602 A.2d at 1359. In *Hampton*, the owner/operator of an uninsured motorcycle attempted to recover underinsured benefits from his father's insurance policy after he was injured in an accident. The insurance policy contained an exclusion identical to the one in the instant case.

The *Hampton* court conducted an extensive review of the legislative history of the MVFRL as well as prior, relevant decisions in Pennsylvania. In reversing the order allowing the owner/operator to recover benefits under his father's policy, the court stated "[t]he MVFRL embodies a new policy, expressed in § 1714, of deterring motorists from failing to insure their vehicles by barring recovery of private insurance benefits." *Hampton*, 935 F.2d at 587.[3]

We agree with both Judge Popovich and the Third Circuit that the MVFRL reflects a heightened concern by the General Assembly toward the increasing consumer cost of automobile insurance attributable in part to motorists who ignore the legal requirement that they insure their vehicles. *See* House

---

**3.** Section 1714 of the MVFRL provides:

> An owner of a currently registered motor vehicle who does not have financial responsibility or an operator or occupant of a recreational vehicle not intended for highway use, motorcycle, motor-driven cycle, motorized pedalcycle or like type vehicle required to be registered under this title cannot recover first party benefits.

75 Pa.C.S. § 1714.

Journal, Dec. 13, 1983 at 2148. Indeed, the Superior Court has also considered the legislative intent behind the MVFRL:

In passing the [MVFRL], the Legislature was primarily concerned with the rising consumer cost of automobile insurance, created in part by the substantial number of uninsured motorists who contributed nothing to the pool of insurance funds from which claims were paid. The [MVFRL] has the effect of requiring all owners of registered vehicles to share in the burden of insurance before they can obtain the benefits. By denying benefits to a certain class of people—those not insuring their registered vehicles—the [MVFRL] encourages the purchase of insurance by all owners who register vehicles which can be legally operated on the highways.

*Allen v. Erie Ins. Co.*, 369 Pa.Super. 6, 10, 534 A.2d 839, 840–41 (1987) (citations omitted).

Despite the foregoing, the Superior Court's analysis in the instant case relied almost exclusively on its decision in *Henrich v. Harleysville Ins. Co.*, 403 Pa.Super. 98, 588 A.2d 50 (1991), *aff'd*, 533 Pa. 181, 620 A.2d 1122 (1993). *Henrich* involved the issue of whether section 1714 of the MVFRL itself precluded the recovery of uninsured motorist benefits by the owner of an uninsured car who was injured while a passenger in a different uninsured car. The Superior Court concluded that section 1714 did not bar the plaintiff from recovering uninsured motorist benefits from her father's insurance policy, under which she was covered.

The court in *Henrich* specifically stated that the plaintiff was not "contractually precluded" from recovering uninsured motorist benefits. *Henrich*, 403 Pa.Super. at 103, 588 A.2d at 52. It did not analyze the public policy aims of the MVFRL because it was only required to interpret the actual language of section 1714 to determine whether the plaintiff was permitted to recover under the statute.

On appeal, this Court affirmed the decision of the Superior Court. *Henrich v. Harleysville Ins. Co.*, 533 Pa. 181, 620 A.2d 1122 (1993). We observed that the MVFRL and section 1714

were "designed to deter people from failing to insure their vehicles more forcefully than the prior [no-fault] statute," and it was ultimately held that section 1714 did not apply to the plaintiff "because she was not operating *her own* uninsured motor vehicle at the time of the accident." *Id.* at 185, 620 A.2d at 1124 (footnote omitted). Because the plaintiff had not been injured while operating her own uninsured vehicle, we declined to express an opinion as to whether the deterrent purpose of section 1714 might be applicable in that particular instance. *Id.*

■ We are now, however, confronted with a situation where an individual was operating *his own* uninsured vehicle at the time of the accident. In addition, the insurance policy under which Appellee Windrim seeks recovery contains an unambiguous exclusionary provision, unlike the policy in *Henrich* which contained no such exclusion. *Henrich* is therefore distinguishable from the instant case. Accordingly, we find that the Superior Court erroneously relied upon *Henrich* in concluding that the legislative intent underlying the Uninsured Motorist Act, as ascertained in *Bankes,* remained the same as that underlying the MVFRL with respect to uninsured motorist benefits.

■ Appellee Windrim has never argued that the exclusionary language in his mother's policy is unclear or ambiguous. Rather, he contends that the provision is void as applied to him because it violates public policy. A clear and unambiguous contract provision must be given its plain meaning, unless to do so would be contrary to a clearly expressed public policy. *Antanovich v. Allstate Ins. Co.,* 507 Pa. 68, 76, 488 A.2d 571, 575 (1985). Furthermore,

"[i]t is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in [declaring that policy to be against public policy]."

*Guardian Life Ins. Co. v. Zerance,* 505 Pa. 345, 354, 479 A.2d 949, 954 (1984) (quoting *Mamlin v. Genoe,* 340 Pa. 320, 325, 17

A.2d 407, 409 (1941)). As stated previously, the legislative history of the MVFRL indicates that the primary concerns of the General Assembly in repealing the No-fault Act and enacting the MVFRL were the spiraling cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways. *See* Senate Journal, Oct. 4, 1983, 1142–53; House Journal, Dec. 13, 1983, 2139–59.

We therefore hold that the exclusion in Windrim's mother's insurance policy is a valid and enforceable provision. Our conclusion is bolstered by the fact that Windrim's argument, if accepted, would actually contravene the legislative intent behind the MVFRL by serving as a disincentive to insure vehicles. As Judge Popovich observed, "[a] possible result ... is that many individuals owning several vehicles will purchase coverage for only one of them. Likewise, relatives living with an insured will be less inclined to purchase insurance for their vehicles, instead seeking uninsured motorist coverage under their relative's insurance policy." *Windrim,* 412 Pa.Super. at 162, 602 A.2d at 1360 (Popovich, J., dissenting). Clearly, the General Assembly did not envision nor intend such abuses of the system when it enacted the MVFRL.

■ Finally, Windrim contends that the exclusionary provision in the instant case is of no legal effect because it was not approved by the Pennsylvania Insurance Commissioner pursuant to section 477b of The Insurance Company Law of 1921, 40 P.S. § 477b.[4] There is no evidence on the record to determine whether the provision at issue was ever submitted for approval. Since we have determined that the provision is valid and enforceable, the matter must be remanded to the Court of Common Pleas for a determination as to whether it was

**4.** Section 477b provides:

It shall be unlawful for any insurance company ... doing business in this Commonwealth, to issue, sell, or dispose of any policy, contract, or certificate, covering life, health, accident, personal liability, fire, marine, title, and all forms of casualty insurance ... until the forms have been submitted to and formally approved by the Insurance Commissioner....

40 P.S. § 477b.

submitted for approval by the Insurance Commissioner in accordance with section 477b.

Accordingly, the Order of the Superior Court is reversed and the matter remanded to the Court of Common Pleas for proceedings consistent with this opinion.

LARSEN, J., did not participate in the decision of this case.

CAPPY, J., files a concurring opinion.

MONTEMURO, J., who was an appointed Justice of the Court at the time of argument, participated in the decision of this case in his capacity as a Senior Justice.*

CAPPY, Justice, concurring.

I concur in the result reached by the majority but write separately because I believe the majority misconstrues this Court's decision in *Henrich v. Harleysville Ins. Co.*, 533 Pa. 181, 620 A.2d 1122 (1993), and in so doing obfuscates the only true distinction between that case and the instant case.

In both *Henrich* and the case *sub judice* an owner of a registered but uninsured vehicle was injured, allegedly as a result of another uninsured driver. In *Henrich*, the injured person was a passenger in another uninsured vehicle whereas here, the injured person was operating his own uninsured vehicle, but was allegedly injured when his vehicle was struck by an unidentified hit and run vehicle. In both cases, the injured uninsured person sought to recover uninsured motorist benefits pursuant to a resident relative's policy of motor vehicle insurance. While the policy at issue in the case *sub judice* contains a specific exclusion precluding the recovery sought, the policy in *Henrich* contained no such exclusion.

The majority here concludes that because the case *sub judice* is factually distinguishable from *Henrich*, the Superior Court erred in relying on its decision therein. *See, Henrich v.*

* Mr. Justice Montemuro is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1800, due to the unavailability of Mr. Justice Larsen, see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

*Harleysville Ins. Co.*, 403 Pa.Super. 98, 588 A.2d 50 (1991), *aff'd*, 533 Pa. 181, 620 A.2d 1122 (1993). The two distinguishing factors according to the majority are: (1) Windrim was operating his own uninsured vehicle at the time of the accident, and (2) the policy at issue here, unlike that in *Henrich*, contains a specific exclusion. Although I agree that the principles set forth in *Henrich* are not controlling here, I cannot subscribe to the majority's reasoning in reaching that result. First, the majority relies upon a factor, the operation of the claimant's own car, which is irrelevant to the issue presented here. Moreover, in an apparent attempt to fit its current decision into the framework of its prior decision in *Henrich*, the majority overlooks the fact that the precise issues presented in *Henrich* and the instant matter are completely distinct.

In *Henrich* we were asked to determine whether the Motor Vehicle Financial Responsibility Law [1] and its underlying public policy would preclude Henrich from recovering benefits under the uninsured motorist provision of her father's automobile insurance policy. In that case, Henrich was a "covered person" under the terms of the policy since she resided in her father's household. The policy at issue in *Henrich* contained no express exclusion of the type contained in the policy at issue in the instant case. It was the contention of the defendant insurance company in *Henrich* that the statutory exclusion of first party benefits contained in § 1714 [2] of the Act, relating to persons who own registered but uninsured vehicles, and the underlying purpose of the Act was indicative of the legislature's intent to deny uninsured motorist benefits to persons such as Henrich who own registered but uninsured

1.  Act of February 12, 1984, P.L. 26, No. 11 § 3 (codified at 75 Pa.C.S. §§ 1701–1799.7), repealing the Pennsylvania No–Fault Insurance Act, Act of July 19, 1994, P.L. 489, No. 176 § 101–701 (previously codified at 40 P.S. §§ 1009.101–1009.701).

2.  Section 1714 of the MVFRL provides:
    An owner of a currently registered motor vehicle who does not have financial responsibility or an operator or occupant of a recreational vehicle intended for highway use, motorcycle, motor-driven cycle, motorized pedalcycle or like type vehicle required to be registered under this title cannot recover first party benefits. 75 Pa.C.S. § 1714.

vehicles notwithstanding the fact that no such express preclusion was written into the uninsured and underinsured motorist provisions of the Act.

In analyzing the issue of whether Henrich should be precluded from recovering uninsured motorist benefits because she owned a registered but uninsured vehicle, the Superior Court first looked to the insurance policy itself, noting that Henrich was not contractually precluded from recovering uninsured motorist benefits. Utilizing principles of statutory construction, the Superior Court then applied the maxim *"expressio unius est exclusio alterius"* (the mention of one thing in a statute implies the exclusion of others not expressed), concluding therefrom that because the legislature did not expressly include a preclusion similar to that of section 1714 in the uninsured motorist section of the Act, it must have implicitly intended not to preclude that same class of claimants from recovering uninsured motorist benefits. In other words, the Superior Court concluded that it was the legislature's apparent intent to preclude owners of registered but uninsured vehicles from recovering first party benefits *only*.

In affirming the decision of the Superior Court, a majority of this Court[3] first acquiesced in that court's reasoning that, since Section 1714 of the MVFRL precludes an owner of a registered but uninsured vehicle from recovering first party benefits *only*, and since the legislature failed to include a similar preclusion for uninsured and underinsured benefits, our rules of statutory construction required a conclusion that the legislature implicitly intended not to preclude that same class of claimants from recovering uninsured or underinsured benefits. Specifically, the majority stated:

> At 75 (Pa.C.S.) § 1702, the term "first party benefits" is defined as "medical benefits, income loss benefits, accidental death benefits and funeral benefits." The MVFRL treats first party benefits separately from uninsured motorist benefits. First party benefits are addressed in Subchapter B of the statute, while uninsured motorist benefits are addressed

---

3. Justice Zappala and I concurred in the result only in *Henrich*.

in Subchapter C. Section 1714 is located in Subchapter B, and Subchapter C contains no similar exclusion. The Superior Court reasoned in the instant case that since 1714 specifically states that owners of uninsured but registered motor vehicles are precluded from recovering first party benefits, sound statutory construction, based on the principle *expressio unius est exclusio alterius* (the express mention of one meaning in a statute implies the exclusion of other meanings), requires the conclusion that the legislature implicitly intended not to preclude that same class of claimants from recovering uninsured motorist benefits. While we can find no fault in the Superior Court's logic, we think that the instant case can be disposed of on both narrower and more fundamental grounds.

*Henrich,* 533 Pa. at 184–185, 620 A.2d at 1124. The majority then went on to conclude that there was nothing in the Act itself nor the public policy underlying the Act which precluded Henrich from recovering uninsured benefits.

Here, however, the issue is not whether the Act and its policy *preclude* recovery by Windrim, but rather whether the clear and unambiguous exclusion contained in his mother's policy *violates* the Act or the public policy underlying same. The resolution of this issue does not depend on whether the claimant was driving or riding in his or her own registered but uninsured vehicle. The only pertinent inquiry is whether the contractual exclusion is void as against public policy. The focus of inquiry here is, thus, entirely distinct from that of *Henrich* and, for that reason alone, *Henrich* is inapplicable to the instant decision.[4]

4. Although not pertinent to my position in the instant concurring opinion, I disagree with the majority's conclusion that the operation of the claimant's own uninsured vehicle, irrespective of fault, is a relevant factor.' Assuming that there was no contractual exclusion at issue here, the fact that Windrim was operating his own uninsured vehicle at the time of the accident, standing alone, would not preclude his recovery of uninsured motorist benefits. Under the MVFRL, uninsured motorist benefits are meant to provide protection for motorists who suffer injury arising out of the maintenance or use of a motor vehicle as a result of the legal liability of an uninsured motorist. Specifically, Section 1731(b) of the MVFRL provides in pertinent part:

Accordingly, we must look to the policy exclusion at issue here which, in pertinent part, provides:

This Uninsured/Underinsured Motorists insurance does not apply as follows . . .

4. . . . It does not apply to bodily injury suffered while occupying or from being hit by a vehicle owned by you or a relative living in your household, but not insured for Uninsured or Underinsured Motorists coverage under this policy.

As the majority here states, a plain and unambiguous provision in an insurance contract provision such as the one at issue here will be held invalid only where that provision is clearly violative of the public policy. *See, Antanovich v. Allstate Ins. Co.*, 507 Pa. 68, 76, 488 A.2d 571 (1985). It is generally recognized that a primary consideration prompting the repeal of the No-fault Act and the passage of the MVFRL, which mandates insurance for all registered vehicles, was the escalating costs of motor vehicle insurance together with the increasingly high number of uninsured motorists using our highways. Thus, as this Court clearly acknowledged in *Henrich*, a primary policy underlying the enactment of the MVFRL was to deter owners of registered vehicles from failing to obtain insurance.

*Uninsured Motorist Coverage*—Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles.

75 Pa.C.S. § 1731(b). In other words, uninsured motorist benefits are available, not because the injured person is himself uninsured, but rather, because the injuries suffered by him were the legal result of another uninsured motorist. Furthermore, in pertinent part, 75 Pa.C.S. § 1702 defines "uninsured motor vehicles" as:

(3) an *unidentified* motor vehicle that causes an accident resulting in injury provided that the accident is reported to the police . . . and the claimant notifies his insurer within 30 days . . . that the claimant . . . has a legal action arising out of the accident. (Emphasis added)

Accordingly, and but for the exclusion contained in the policy at issue, if it were ultimately determined that there was, indeed, a hit-and-run driver who caused the accident and Windrim's resulting injuries, the fact that Windrim was driving his own uninsured vehicle does not, standing alone, bear on the issue of whether he was entitled to uninsured motorist coverage.

Viewing the exclusion at issue here, I am constrained to conclude that it is entirely consistent with the public policy underlying the enactment of the MVFRL and therefore, is valid and enforceable. There is no question that by being denied coverage, Windrim will be induced to purchase the mandated automobile insurance for his registered automobiles. In addition, it is axiomatic that the cost of insurance will be reduced as a result of providers not having to pay benefits to uninsured persons who have failed to comply with the law and thereby failed to contribute to the resources necessary for a comprehensive insurance program. Both the insurance company and the insured have recognized this public policy in negotiating the contractual exclusion. The fact that appellant bore no fault in this particular accident is irrelevant since the concept of fault was never contemplated in the bargained-for contract.

For the reasons set forth above, I concur in the result reached by the majority, but I am constrained to disassociate myself with the reasoning and rationale utilized in the majority opinion.