## Greer v. Prudential Property & Casualty Insurance Co.

C.P. of Bucks County, no. 96-09067-20-6.

*David S. Berman,* for plaintiffs.
*Howard Wishnoff,* for defendant.

McANDREWS, *J.*, May 27, 1997—The matter comes before the court under Bucks County Rule of Civil Procedure *266, upon petition to vacate the underinsured motorist arbitration award by defendant Prudential Property and Casualty Insurance Company. Plaintiff has submitted a cross-petition to confirm the arbitration award, which is also before the court. Oral argument on the petitions was held on April 29, 1997, before the undersigned.

On April 30, 1993, plaintiff Jason Greer, "Son," was involved in an automobile accident. At the time, Son operated his own uninsured vehicle. Son suffered personal injuries in the accident, for which he received compensation from the tort-feasor.

Subsequently, Son sought underinsured motorist, "UIM," benefits. Son's father, Paul Greer, had an auto-

mobile liability policy with Prudential. Son resided with Father. On this basis, Son sought UIM benefits through Prudential.

Prudential's policy stated that Prudential would provide coverage for UIM purposes as follows:

"WHO IS INSURED (PART 5)

"IN YOUR CAR (INCLUDES A SUBSTITUTE CAR)

"You and a resident relative are insured while using your car or a substitute car covered under this part. . . .

"IN A NON-OWNED CAR

"You and a resident relative are insured while using a non-owned car. The owner must give permission to use it. It must be used in the way intended by the owner. . . .

"LOSSES WE WILL NOT PAY FOR (PART 5) . . .

"REGULARLY USED NON-OWNED CARS

"We will not pay for bodily injury to you or a household resident using a non-owned car not insured under this part, regularly used by you or a household resident." *Id.* at exhibit A, part 5, pp. 6-7.

The policy defined "non-owned car" in another section:

"A non-owned car is a car which is not owned or registered in the name of or furnished or available for the regular or frequent use of you or a household resident." *Id.* at part 1, p. 2.

Prudential denied Son's right to UIM benefits. Prudential agreed that Son was a "resident relative." However, Prudential contended that Son's own uninsured vehicle did not qualify as "a non-owned car" under the terms of the policy.

The parties submitted the dispute to arbitration, as called for in the policy. An arbitration panel of three was selected. On October 13, 1995, and June 27, 1995, hearings before the arbitration panel were held. On November 15, 1996, the panel issued an award in favor of plaintiff in the amount of $45,000. The panel stated:

"The panel finds that Prudential's policy language defines an 'insured,' for UM/UIM purposes, to include only those occupying 'non-owned' cars as defined by the policy is void, absent an express exclusion of uninsured owner operators." (Petition of defendant Prudential to vacate the underinsured motorist arbitration award, at exhibit E.)

It is this decision which the parties now ask the court to either vacate or confirm.

Initially, the court notes that the matter is properly before this court for review. Under Pennsylvania law, underinsured motorist arbitration awards may be reviewed under very limited circumstances. It must be shown that: (1) a party was denied a hearing; (2) fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award; or (3) the claimant attacks a particular provision of the insurance policy itself as being contrary to a constitutional, legislative, or administrative mandate, or against public policy or unconscionable." See *Azpell v. Old Republic Insurance Co.,* 526 Pa. 179, 183, 584 A.2d 950, 952 (1991).

The arbitration award at issue falls squarely within the last of the three categories set forth above.

First, the panel's decision clearly "attacks a particular provision of the insurance policy itself." See *Azpell, supra.* The panel declared Prudential's policy language "void." The word "void" is defined as: null; ineffectual; nugatory; having no legal force or binding effect; unable,

in law, to support the purpose for which it was intended. Black's Law Dictionary, 1573 (6th ed. 1990). Thus, the decision that the provision of an insurance agreement was void clearly goes to the heart of Prudential's UIM provision.

Second, the panel's decision declared the policy void "absent an express exclusion of uninsured owner operators." If the panel's decision had hinged upon a constitutional, legislative or administrative authority, citations would have been necessary. Because no citations were supplied, this court can only conclude that the panel declared the limitation void because it was contrary to some general "public policy." *Id.* Thus, this court has authority to review the panel's decision.

Additionally, it is clear to this court upon review that the arbitration panel's decision should be vacated. Under Pennsylvania law, "a clear and unambiguous contract provision must be given its plain meaning, unless to do so would be contrary to a clearly expressed public policy." *Windrim v. Nationwide Insurance Co.,* 537 Pa. 129, 135, 641 A.2d 1154, 1157 (1994) (citing *Antanovich v. Allstate Insurance Co.,* 507 Pa. 68, 76, 488 A.2d 571, 575 (1985)). Further, only when a provision of an insurance policy is so obviously against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, may a court "constitute itself the voice of the community" and declare the policy void. *Paylor v. Harford Insurance Co.,* 536 Pa. 583, 587, 640 A.2d 1234, 1235 (1994) (quoting *Mamlin v. Genoe,* 340 Pa. 320, 325, 17 A.2d 407, 409 (1941)).

From 1977 to 1984, motor vehicle coverage in the Commonwealth of Pennsylvania was regulated under the No-Fault Motor Vehicle Insurance Act. See 40 Pa.C.S. §1009. The public policy underlying the

NMVIA favored recovery of insurance benefits by uninsured motorists. See *Windrim, supra* at 133, 641 A.2d at 1156 (discussing *Bankes v. State Farm Mutual Automobile Insurance Co.,* 216 Pa. Super. 162, 264 A.2d 197 (1970)). To this end, the law "ensured [that] owners/operators of uninsured vehicles [would] receive uninsured motorist benefits." *Id.* at 132-33, 641 A.2d at 1156 (citing *Windrim v. Nationwide Mutual Insurance Co.,* 412 Pa. Super. 155, 159-60, 602 A.2d 1356, 1358 (1992)). In fact, in the course of drafting the NMVIA, the Pennsylvania Legislature had "specifically rejected a proposal to include a statutory household exclusion provision." *Nationwide Mutual Insurance Co. v. Hampton,* 935 F.2d 578, 588 (3d Cir. 1991).

In 1984, the NMVIA was replaced by the Motor Vehicle Financial Responsibility Law. See 75 Pa.C.S. §1731. The Supreme Court of Pennsylvania stated in *Paylor:*

"The repeal of the No-Fault Act and the enactment of the MVFRL reflected a legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways. The legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL. This reflects the General Assembly's departure from the principle of 'maximum feasible restoration' embodied in the now defunct No-Fault Act." *Id.* at 587, 640 A.2d at 1235.

The new "statutory scheme indicate[d] that private uninsured and underinsured benefits [were to be] treated separately from basic liability benefits." *Id.* at 518. Thus, the MVFRL "embodie[d] a new public policy . . . against recovery of insurance benefits by owners of uninsured vehicles." *Id.*

In applying the public policy mandate of the MVFRL, Pennsylvania courts have repeatedly found that exclusions from UIM coverage limitations of non-owned uninsured vehicles are valid and enforceable. See *e.g., Windrim, supra* at 136, 641 A.2d at 1158. In *Windrim,* an individual operating his own uninsured vehicle at the time of the accident sought UIM benefits under his mother's policy. *Id.* at 131, 641 A.2d at 1155. Coverage was denied because the policy stated that UIM coverage would be excluded where "bodily injury [was] suffered while occupying or from being hit by a motor vehicle owned by you or a relative living in your household, but not insured for uninsured or underinsured motorists coverage under this policy." *Id.* The dispute went to arbitration. The panel determined that public policy precluded the enforcement of the exclusion. Both the Court of Common Pleas, Philadelphia County, and the Superior Court affirmed the arbitration award. On appeal, however, the Supreme Court reversed. The Supreme Court found the exclusion to be clear and unambiguous and went on to hold that:

"[T]he exclusion in Windrim's mother's insurance policy is a valid and enforceable provision. Our conclusion is bolstered by the fact that Windrim's argument, if accepted, would actually contravene the legislative intent behind the MVFRL by serving as a disincentive to insure vehicles. As Judge Popovich observed, '[a] possible result . . . is that many individuals owning several vehicles will purchase coverage for only one of them. Likewise, relatives living with an insured will be less inclined to purchase insurance for their vehicles, instead seeking uninsured motorist coverage under their relative's insurance policy.' . . . Clearly, the General Assembly did not envision nor intend such abuses of the system when it enacted the MVFRL." *Id.* at 136, 641 A.2d at 1158 (quoting *Windrim,* 412 Pa. Super.

at 162, 602 A.2d at 1360 (Popovich, J., dissenting)). (citation omitted)

This court finds the Supreme Court's holding in *Windrim, supra,* to be dispositive. Under the MVFRL, Pennsylvania law now disfavors the liberal recovery of insurance benefits by owners of uninsured vehicles. Prudential's policy provision unambiguously limited UIM coverage of non-owned vehicles to those that were regularly used by the insured or a resident relative of the insured. Thus, the limitation is not contrary to the public policy of this Commonwealth.

Further, to interpret the provision as appellee requests would directly contradict the public policy mandate of the MVFRL. Son asks this court to construe Prudential's policy to allow payment of UIM benefits when Son was driving his own uninsured vehicle at the time of the accident. Such an interpretation would only serve as a disincentive toward the purchase of insurance, in cases where persons reside with a relative who has already purchased automobile insurance coverage of their own vehicles. This court cannot condone behavior that so clearly violates the legislative intent underlying the MVFRL.

For all the above-stated reasons, the court enters the attached order, vacating the arbitration panel award.

## ORDER

And now, May 27, 1997, upon consideration of defendant's petition to vacate the underinsured motorist arbitration award, plaintiffs' new matter/cross-petition to confirm the arbitration award, the answers thereto, and the memorandum of law supplied thereupon, it is hereby ordered and directed that defendant's petition to vacate the underinsured motorist arbitration award is granted. It is also ordered and directed that plaintiffs' new matter/cross-petition to confirm the arbitration award is denied.