## Pennland Insurance Co. v. Thomas

*David M. McCormick,* for plaintiff.
*Ronald I. Kaplan,* for defendant.

DiNUBILE, JR., *J.,* October 27, 1997—The instant proceeding had been submitted to the Honorable Berel Caesar for resolution on the briefs and pleadings. He is the author of this opinion. Due to his untimely death prior to its issuance, the undersigned, as supervising judge of the Complex Litigation Center, joins in this opinion and signs it on behalf of Judge Caesar as well.

The dispute involves a claim by a motorcyclist who seeks underinsured motorist benefits under an automobile insurance policy covering *two other* vehicles owned by him.

The facts are undisputed. The claimant, George Thomas, was the owner and operator of a 1991 Suzuki motorcycle when he sustained injuries from an accident with a vehicle operated by Ruth E. Rosenblatt in Sommerdale, New Jersey. After receiving Ms. Rosenblatt's policy limits of $25,000 for bodily injury, Mr. Thomas sought underinsured motorist coverage from a policy that he held with Pennland Insurance Company on two other vehicles that he owned. Pennland Insurance Company denied the plaintiff's claim for benefits and brought an action for declaratory relief on the ground that coverage did not exist under the insurance policy at issue.

In support of its position, Pennland cited the underinsured motorist endorsement in its policy covering the two *other* vehicles which specifically limits underinsured coverage to only those vehicles, providing:

"We do not provide underinsured motorist coverage for bodily injury sustained:

"(1) by you while occupying, or when struck by, any motor vehicle you own which is not insured for coverage under this policy. . . ."

Pennland first argues that since the claimant's motorcycle qualifies under the definition of a motor vehicle and is not identified as an insured vehicle under the policy, the claimant is not entitled to any underinsured benefits.

Pennland further argues that since the claimant purposely elected not to purchase higher premium underinsured motorist coverage on the motorcycle, he should not be permitted to claim such coverage through policies on other vehicles. As posited by Pennland, to do so would enable the claimant to receive coverage on the motorcycle without tendering a premium. In advancing this argument, Pennland points to the distinctions in coverage risk between motorcycles and automobiles.

The claimant, George Thomas, on the other hand, argues that the exclusion is inapplicable to his particular claim since he was operating a motorcycle. Thomas adopts a position contrary to that of Pennland, asserting that a motorcycle does not qualify as a motor vehicle under the exclusionary endorsement and that he therefore is covered under the policy. Thomas further asserts that the exclusion is unlawful and against public policy.

The claimant's brief is cursory involving no citation to any applicable authority. Pennland Insurance Company's brief does address the issues presented, but over-

looks case law directly on point. The court agrees with Pennland's position and finds that no underinsured motorist benefits are provided for the injuries sustained by the claimant while operating his motorcycle.

The court finds that Thomas' argument that the motorcycle does not qualify as a motor vehicle under the exclusion is entirely unsupported. By its plain definition, the word motor vehicle is inclusive of motorcycles. See The American Heritage Dictionary at 447 (Second College Ed., Houghton Mifflin Company 1983) (expansively defining motor vehicle as "Any self-propelled motor-powered vehicle that travels on wheels but does not run on rails."). The claimant fails to point to any definitions or statements in the insurance policy to suggest otherwise.

The claimant's reliance on provisions in the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701 et seq., which distinguish motorcycles from other vehicles, in support of his coverage argument is misplaced. Although these provisions make distinctions applicable to motorcycles, none of these distinctions are based upon the plaintiff's theory that a motorcycle is not a motor vehicle. Rather, the import of these provisions is to relieve insurance companies of being required to provide insurance benefits otherwise required for vehicles on account of the increased risks associated with motorcycles. See 75 Pa.C.S. §1711 (insurers not required to provide medical benefits, income loss benefits, accidental death benefits, funeral benefits, and extraordinary medical benefits for motorcyclists); see also, 75 Pa.C.S. §1714 (precluding motorcyclists from recovering first party benefits). Thus, the specific provisions to which reference is made, actually stand in opposition to the argument asserted by Thomas that an insurance policy on two cars must cover a motorcycle.

Furthermore, the fact that a motorcycle falls within the category of a motor vehicle under the Motor Vehicle Financial Responsibility Law may be inferred based upon the wording of section 1712 which encompasses the availability of benefits. As provided therein:

"An insurer issuing or delivering liability insurance policies covering any *motor vehicle* of the type required to be registered under this title, *except* . . . motorcycles . . . registered and operated in this Commonwealth, shall make available for purchase first party benefits. . . ."

In addition, motorcycles have been classified as motor vehicles in the context of cases considering coverage requirements promulgated under section 1711 of the Motor Vehicle Financial Responsibility Law. See *Green v. K&K Insurance Co.,* 389 Pa. Super. 73, 75, 566 A.2d 622, 623 (1989) (court held that "Pursuant to this section, insurers of motorcycles are not required to provide the first party benefits that insurers of *other motor vehicles* must provide."). (emphasis added). Finally, this issue was confronted directly in a 1930 case which examined the laws then in effect. There, the Pennsylvania Supreme Court held that " 'motor vehicle' as a generic term, includes all classes of self-propelled vehicles (42 C. J. 609), and so would embrace a motorcycle, . . ." *Deardorff v. Continental Life Insurance Co.,* 301 Pa. 179, 151 A. 814 (1930).

The claimant also advances the argument that this exclusionary provision is contrary to public policy. His rationale is misplaced. The court finds the exclusionary provision to be wholly in accord with public policy and to be lawful. In reaching this conclusion, we are guided by the disposition of *Maney v. Lloyd,* 430 Pa. Super. 441, 634 A.2d 1139 (1993), in which the Superior Court enforced an exclusionary clause effectively limiting excess insurance coverage only to those specific

vehicles denoted in an insurance policy. *Maney* involved an action for declaratory relief instituted in order to receive excess coverage under an insurance policy held by a tort-feasor's stepfather. Coverage was excluded on the ground that the stepson's vehicle did not qualify as a "covered vehicle" under the stepfather's insurance policy. Conferring authority upon insurers to limit the scope of underinsured motorist coverage to vehicles covered under the policy, the court, in *Maney,* stated: "we find that the exclusionary clause in Shimmel's [the stepfather's] policy forecloses the plaintiffs from recovering any monies under the liability provisions given that the vehicle in which the plaintiff's decedent was riding falls outside the scope of coverage." *Id.* at 449, 634 A.2d at 1143.

The rationale for upholding the exclusion in *Maney* limiting excess coverage applies to the instant case as well, in which there is a limitation on coverage applying to motor vehicles not insured by Pennland.

The standard for adjudging whether an insurance policy is violative of public policy is articulated by the Pennsylvania Supreme Court in *Windrim v. Nationwide Insurance Co.,* 537 Pa. 129, 135, 641 A.2d 1154, 1157 (1994): "[i]t is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in [declaring that policy to be against public policy]." (citations omitted)

Clearly, this exclusionary clause here, far from being against public policy, actually makes sense. The rationale for upholding exclusions such as presented here is best brought to light by the Superior Court in *Insurance Co. of North America v. Hippert,* 354 Pa. Super. 333, 511 A.2d 1365 (1986). In *Hippert,* the court vali-

dated an exclusionary clause in an automobile insurance policy limiting bodily injury coverage to vehicles insured under the policy. In precluding recovery of first party medical benefits by a claimant for injuries sustained as a result of an accident involving a vehicle not covered under the policy, the *Hippert* court reasoned that compelling coverage would improperly enable the insured to receive benefits on two vehicles while only paying insurance premiums on one of them. *Id.* at 339, 511 A.2d at 1368. Under *Hippert,* therefore, public policy does not enable consumers to purchase benefits on one vehicle with the hopes of receiving benefits on multiple vehicles if otherwise prohibited under the insurance policy.

A careful review of the Motor Vehicle Financial Responsibility Law reveals that underinsured motorist coverage is optional at an additional premium. See 75 Pa.C.S. §§1731, 1738. In other words, to the extent that such coverage is desired, the policyholder must pay.

If one were to invalidate exclusionary clauses limiting underinsured motorist coverage to claims involving vehicles covered by the policy itself, a consumer who owns multiple vehicles would effectively receive coverage on additional vehicles without paying an additional premium. Such a rationale invalidating the exclusionary clause would in fact be against public policy. It would be the consumer who will ultimately bear the expense. Insurance companies will recognize that individuals owning multiple motor vehicles require more expansive coverage and will simply raise the premium on all insureds to reflect the increased risk. Under this scenario, both the insurer and the consumer are deprived of the ability to negotiate the scope of coverage. Validating exclusionary clauses limiting insurance cov-

erage to motor vehicles specified in an insurance policy enables consumers to minimize their expenses and insurers to limit their exposure. Public policy therefore favors such exclusionary clauses rather than condemns it.

The second compelling reason for enforcing the exclusionary clause under the circumstances presented is that the motorist was seeking to provide coverage for a motorcycle through a general automobile policy. Throughout the Pennsylvania Motor Vehicle Financial Responsibility Law and the case law in this Commonwealth, recognition is taken of the additional risks associated with insuring motorcycles. On account of this reason, insurers are not required to provide some of the basic coverage otherwise mandated. See 75 Pa.C.S. §§1712, 1714 (discussed previously).

This recognition that a motorcycle is a more dangerous instrument on the highways than an automobile was cogently articulated by Justice Kephart in *Deardorff, supra:*

"A motorcycle is an instrument of danger on the highway, even more so than an automobile. It is dangerous to the public at large, but the special danger is to the driver of the motorcycle itself. When the driver of an automobile attempts to pass a motorcycle on the highway, he must exercise great care; should he touch the rider while passing, serious consequences follow. The passing of motorcycles around automobiles is also dangerous and annoying. Motorcycles on the highway are constantly dodging in and about cars, subjecting both to great risks. Because of the accidents attributed to motorcycles they are frequently termed a common nuisance. There is greater danger connected with the operation of a motorcycle than any other self-propelled, power-driven vehicle." *Id.* at 182, 151 A. at 814.

While societal perceptions of motorcyclists have evolved over the decades, the inherent dangers associated with operating motorcycles continue to distinguish them from other motor vehicles. See *Mitchell v. Travelers Insurance Co.,* 522 Pa. 545, 553, 564 A.2d 1232, 1236 (1989) (there is a greater risk attendant with operating or riding a motorcycle).

It would be patently unfair to construe an automobile policy to confer underinsured coverage on a motorcycle that was not specifically named as an insured vehicle when there is an exclusionary clause such as that presented in this case. Such construction would completely negate any incentive to purchase underinsured coverage on the motorcycle itself at a much higher premium.

The cases relied upon by the claimant are inapposite since they involve the "family car exclusion," which encompasses an entirely separate and distinguishable set of policy objectives. No further discussion is warranted on this point.

Based upon the aforesaid reasons, the trial court hereby enters the following disposition.

## ORDER

And now, to wit, October 27, 1997, on consideration of plaintiff, Pennland Insurance Company's, action for declaratory relief and defendant, George Thomas', response, as well as all of the pleadings and briefs submitted in the matter, it is hereby ordered and decreed that:

(1) No underinsured motorist coverage is provided under George Thomas' motor vehicle policy as to cover his injuries sustained while operating a motorcycle not included in that policy.

(2) The exclusionary clause in the insurance policy covering the automobiles owned by George Thomas, limiting coverage to automobiles specified in the policy, is lawful and enforceable.

By virtue of the foregoing order, George Thomas' claim for underinsured benefits against Pennland Insurance Company is denied.