**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant,**

v.

**Leonard COVIELLO; Mary Coviello, h/w; Ann Coviello.**

**No. 99–4066.**

United States Court of Appeals, Third Circuit.

Argued: Sept. 14, 2000.

Filed: Nov. 29, 2000.

Teresa F. Sachs, (Argued), Britt, Hankins, Schaible & Moughan, Philadelphia, PA, for appellant.

Johanna L. Gelb, (Argued), Scranton, PA, for appellees.

Before: ROTH, McKEE and RENDELL, Circuit Judges.

**OPINION OF THE COURT**

RENDELL, Circuit Judge.

## I. Introduction

In this appeal we address the arbitrability of a dispute regarding coverage under an automobile insurance policy. The insurer, State Farm Mutual Automobile Insurance Company ("State Farm"), argues that the dispute should be settled in the courts, while the insured, Mary Coviello ("Coviello"), insists that it should be settled via arbitration, pursuant to an arbitration clause in the relevant insurance policy. The District Court credited Coviello's arguments, concluding that "[t]he arbitration clause clearly encompasses [the] coverage dispute" between the parties, and therefore dismissed State Farm's declaratory judgment action. App., Vol. I, at A–12.

State Farm contends that resolution of the parties' dispute turns on a question of public policy, and urges us to reverse the

District Court based on the broad proposition that under Pennsylvania law, the courts—and not arbitrators—should assume jurisdiction over such matters. Alternatively, State Farm argues that the District Court erred in ruling that the dispute falls within the scope of the relevant arbitration provision. We agree with State Farm that resolution of the parties' disagreement hinges on a question of public policy; moreover, we believe that whether this dictates that the dispute should be heard in the courts is a question that could have broad future implications, and is worthy of our consideration. However, we base our decision on an alternative ground presented by the parties, namely, the scope of the arbitration provision. In our view, the Pennsylvania courts would conclude that they should take jurisdiction over this matter because the arbitration clause at issue does not encompass the parties' coverage dispute. We will reverse and remand.

## II. Facts and Procedural Background

The parties have stipulated to many of the relevant facts in this case, and no material facts are in dispute. On June 23, 1998, Coviello was injured in a single-vehicle accident in Dickson City, Pennsylvania. She was a passenger in an automobile operated by her husband, Leonard Coviello. The Coviellos admit that Leonard was at fault in the accident, which is not surprising given that the accident did not involve any other vehicles. Coviello and her husband were the registered owners of the automobile that was involved in the accident, and they held an insurance policy with State Farm that covered their automobile. Coviello made a liability claim against Leonard under this policy and received the $100,000 policy limit.

At the time of the accident, Ann Coviello, the Coviellos' daughter, resided with her parents. Ann had her own automobile and was the named insured on a separate insurance policy, also issued by State Farm. Coviello seeks underinsured motor-

ist benefits under her daughter Ann's policy, based on the reasoning that the vehicle she and her husband Leonard owned, and which Coviello occupied at the time of the accident, qualifies as an "underinsured motor vehicle" under Ann's policy. State Farm does not contest that Coviello qualifies as "an insured" person under her daughter Ann's policy.

State Farm, however, denies that Ann's policy provides underinsured motorist coverage to Coviello under these circumstances. State Farm points to what is commonly called the "family vehicle exclusion" in Ann's policy, which states that "[a]n underinsured motor vehicle does not include a land motor vehicle ... (2) furnished for the regular use of you, your spouse *or any relative*." App., Vol. II, at A-45 (emphasis added). The parties have stipulated that Coviello is a "relative" of Ann within the meaning of her daughter's policy.

State Farm filed a complaint in the District Court on April 12, 1999, seeking a declaration that Coviello is not entitled to underinsured motorist coverage under Ann's policy because the "family vehicle exclusion" is applicable and should bar her claim for benefits. Coviello filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the dispute between the parties is subject to arbitration under the terms of the policy. On November 22, 1999, the District Court granted the Coviellos' motion to dismiss. State Farm moved for reconsideration, which the District Court denied on February 17, 2000.

## III. Jurisdiction and Standard of Review

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. *See Nationwide Ins. Co. v. Patterson*, 953 F.2d 44, 45–46 (3d Cir.1991) (holding that appellate jurisdiction exists under 28 U.S.C. § 1291 even when the practical effect of a district court's order is that the parties would submit their dispute to arbitration).

Our review of a motion to dismiss is plenary. *See, e.g., Semerenko v. Cendant Corp.,* 223 F.3d 165, 173 (3d Cir.2000). However, we are mindful that when reviewing any factual determinations that the District Court made in interpreting the relevant insurance policy, we apply a clear error test. *See, e.g., Ram Constr. Co. v. Am. States Ins. Co.,* 749 F.2d 1049, 1053 (3d Cir.1984).

## IV. Discussion

### A.

 This diversity action is governed by substantive state law. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties agree that Pennsylvania law applies.[1] In the absence of an agreement to the contrary, we will presume that the parties' dispute is governed by the principles of common law arbitration. *See, e.g., Borgia v. Prudential Ins. Co.,* 561 Pa. 434, 750 A.2d 843, 846–47 (2000). When ascertaining Pennsylvania law, the decisions of the Pennsylvania Supreme Court are, of course, the authoritative source. *See, e.g., Connecticut Mut. Life Ins. Co. v. Wyman,* 718 F.2d 63, 65 (3d Cir.1983). If the Pennsylvania Supreme Court has not yet passed on the issue before us, we must consider the pronouncements of the lower state courts, *see id.,* as well as federal appeals and district court cases interpreting state law, *see, e.g., Boyanowski v. Capital Area Intermediate Unit,* 215 F.3d 396, 406 (3d Cir.2000).

State Farm urges that, regardless of whether the policy declares that the parties' dispute should proceed to arbitration, State Farm's declaratory judgment action should not have been dismissed because the instant dispute involves a question of public policy that should be decided by the courts, and not by an arbitrator. In State Farm's view, the only way that Coviello can prevail in her pursuit of underinsured motorist benefits is if the "family vehicle exclusion" in Ann's policy does not apply. State Farm argues that the only way the exclusion would not apply to the facts of this case is if the exclusion itself were declared invalid and unenforceable as against the public policy underlying the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"). Relying principally on *Warner v. Continental/CNA Insurance Cos.,* 455 Pa.Super. 295, 688 A.2d 177 (1997), in which the Pennsylvania Superior Court stated that "both this Court and the [Pennsylvania] Supreme Court have repeatedly approved the use of a declaratory judgment action despite the presence of an arbitration agreement, where the disputed issue is whether a particular provision of an insurance policy is contrary to a constitutional, legislative, or administrative mandate," *id.* at 181, State Farm asserts that the courts, and not an arbitrator, should exercise jurisdiction over Coviello's public policy challenge to the exclusion.

Coviello responds that *Warner* is inapplicable, because she is not asserting a challenge based on public policy grounds.

---

**1.** We recognize that when construing or enforcing an arbitration clause, even a federal court sitting in diversity might be obliged to apply federal law if the matter falls within the ambit of the Federal Arbitration Act, 9 U.S.C. §§ 1–16. Federal law should apply if an arbitration agreement is connected to a transaction involving interstate commerce. *See, e.g., PaineWebber Inc. v. Hartmann,* 921 F.2d 507, 510 (3d Cir.1990). Whether the insurance policy in the instant case evidences a transaction involving interstate commerce is a factual determination that the District Court should have made. *See, e.g., Goodwin v. Elkins & Co.,* 730 F.2d 99, 109 (3d Cir.1984).

The District Court, however, did not address this issue. Nonetheless, we conclude that the District Court's oversight is harmless because there is no meaningful difference between federal and Pennsylvania law when reviewing the scope of an arbitration clause. *Compare* 9 U.S.C. § 4 *with* 42 Pa.Cons.Stat.Ann. §§ 7304, 7342(a) (West 1998); *see also Hartmann,* 921 F.2d at 510 n. 3 (stating that the Federal Arbitration Act and statutory arbitration under Pennsylvania law are "functionally equivalent" regarding the authority of a district court to review the scope of an arbitration clause).

Rather, she states that her position "is based on Pennsylvania appellate court precedent—not public policy." Appellee's Br. at 9. She also argues that, even if the applicability of the exclusion to her case raises public policy issues, arbitration is nonetheless the appropriate forum, in accordance with our decision in *Nationwide Insurance Co. v. Patterson*, 953 F.2d 44 (3d Cir.1991).

As we assess Coviello's arguments, we think it is clear that she is challenging the applicability of the "family vehicle exclusion" on public policy grounds. The only way that Coviello can succeed on her claim is if the exclusion is invalidated.[2] According to the "Pennsylvania appellate court precedent" that Coviello relies upon, the exclusion should be invalidated only if, under the circumstances of a particular case, it violates public policy as expressed by the Pennsylvania MVFRL. *See Marroquin v. Mut. Benefit Ins. Co.*, 404 Pa.Super. 444, 591 A.2d 290, 296 (1991) (finding the exclusion "invalid and unenforceable as being void as against public policy" in the specific factual circumstances presented by the parties). The Pennsylvania Supreme Court also has left no doubt that the enforceability of the exclusion is a question of public policy. *See, e.g., Eichelman v. Nationwide Ins. Co.*, 551 Pa. 558, 711 A.2d 1006, 1008 (1998) (explaining that "the present dispute centers on whether the [family vehicle] exclusion provision violates public policy"). In the many cases that have assessed the exclusion, the Pennsylvania courts have often upheld the exclusion, *see, e.g., Eichelman*, 711 A.2d at 1010; *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234, 1241 (1994), but they also have invalidated it under certain circumstances, *see, e.g., Marroquin*, 591 A.2d at 296. What is abundantly clear, however, is that the only way that the exclusion can be invalidated is if, in the circumstances of a particular case, it is void as against public policy. Thus, the applicability of the exclusion is a question of public policy, regardless of how Coviello chooses to characterize it.[3]

Having determined that the applicability of the "family vehicle exclusion" is a question of public policy, we face the thorny issue of whether this dictates that the parties' dispute be resolved by the courts, rather than by arbitration. Coviello offers our opinion in *Patterson*, where we held arbitration to be appropriate, as authority for the proposition that public policy issues may be arbitrated. However, the parties' dispute in *Patterson* was based in part on public policy, and in part on contract principles, *see Patterson*, 953 F.2d at 48, and therefore we do not view *Patterson* as controlling where, as here, public policy is the sole possible basis for not enforcing

2. The "family vehicle exclusion" in Ann's policy states that "[a]n underinsured motor vehicle does not include a land motor vehicle ... furnished for the regular use of you, your spouse or any relative." Coviello has not suggested that this language is unclear or ambiguous. Nor does she dispute that she is a "relative" of her daughter Ann within the meaning of the policy. Further, Coviello cannot deny that the automobile involved in the accident was "a land motor vehicle" furnished for her or her husband's "regular use." Accordingly, Coviello does not dispute that the plain language of the "family vehicle exclusion" clearly and unambiguously bars her from recovering underinsured motorist benefits under Ann's policy.

3. The District Court concluded that Coviello was not challenging the "family vehicle exclusion" on public policy grounds, but merely "assert[ing]" that Mary Coviello is an insured for [underinsured motorist] purposes under Ann Coviello's policy." App., Vol. I, at A–10. However, we do not view this as a meaningful distinction, because as discussed above, the only possible way that Coviello could collect underinsured motorist benefits under Ann's policy is if she could have the exclusion invalidated on public policy grounds. Perhaps the District Court was diverted by its mistaken assumption that the "threshold issue" in the case is "whether Mary Coviello qualifies as an insured for [underinsured motorist] purposes under Ann Coviello's policy." *Id.* at A–12. Rather than being the "threshold issue," this coverage issue is, in fact, the ultimate issue in the case—and one that can only be determined by assessing the validity of the "family vehicle exclusion" in Ann's policy.

the "family vehicle exclusion." Examining the rulings of the Pennsylvania courts, we do not find a definitive answer to the question of the proper forum when the parties' dispute hinges on an issue of public policy. In making this determination, we focus our analysis on two Pennsylvania Superior Court cases, *Warner v. Continental/CNA Insurance Cos.*, 455 Pa.Super. 295, 688 A.2d 177 (1996) and *Nationwide Mutual Insurance Co. v. Pitts*, 400 Pa.Super. 269, 583 A.2d 489 (1990), and one Pennsylvania Supreme Court case, *Windrim v. Nationwide Insurance Co.*, 537 Pa. 129, 641 A.2d 1154 (1994).

In *Warner*, the Pennsylvania Superior Court stated, as we referenced above, that "both this Court and the [Pennsylvania] Supreme Court have repeatedly approved the use of a declaratory judgment action despite the presence of an arbitration agreement, where the disputed issue is whether a particular provision of an insurance policy is contrary to a constitutional, legislative, or administrative mandate." *Warner*, 688 A.2d at 181 (citing cases). This directive seems to require that State Farm's declaratory judgment action should

proceed in the courts because, as explained above, the disputed issue in this case is whether the "family vehicle exclusion" in Ann's policy runs counter to legislative mandate set forth in the Pennsylvania MVFRL. However, the *Warner* court's conclusion does not withstand scrutiny. Indeed, none of the Pennsylvania Supreme Court[4] nor the Pennsylvania Superior Court cases[5] that the *Warner* court relied upon support its blanket proposition. Consequently, despite its bold language, *Warner* is not dispositive.

Moreover, *Warner* appears to be in direct conflict with the Pennsylvania Superior Court's earlier decision in *Pitts*, in which the court held that when a dispute falls within the scope of an insurance policy's arbitration provision, the arbitrators "clearly have the jurisdiction to consider" public policy issues. *Pitts*, 583 A.2d at 491. As in the instant case, the insurance company in *Pitts* filed a declaratory judgment action seeking a determination that it was not contractually bound to provide underinsured motorist coverage to the insured. *See id.* The insured objected on the ground that the parties' dispute should

---

**4.** The *Warner* court cited *Azpell v. Old Republic Insurance Co.*, 526 Pa. 179, 584 A.2d 950 (1991), *Hall v. Amica Mutual Insurance Co.*, 538 Pa. 337, 648 A.2d 755 (1994). and *Davis v. Government Employees Insurance Co.*, 500 Pa. 84, 454 A.2d 973 (1982). These cases, however, are inapposite because they do not involve declaratory judgment actions. Rather, they address the proper scope of judicial review of an arbitration award challenged on public policy grounds. *See Hall*, 648 A.2d at 757–58; *Azpell*, 584 A.2d at 951–52; *Davis*, 454 A.2d at 975 n. 5.

**5.** The *Warner* court also relied upon *Federal Kemper Insurance Co. v. Wales*, 430 Pa.Super. 208, 633 A.2d 1212 (1993). *Clark v. State Farm Automobile Insurance Co.*, 410 Pa.Super. 300, 599 A.2d 1001 (1991), and *Sands v. Andino*, 404 Pa.Super. 238, 590 A.2d 761 (1991). However, these case are not applicable, because in each of them, the court held that the disputed issues did not fall within the scope of the arbitration provision. *See Wales*, 633 A.2d at 1213–14; *Clark*, 599 A.2d at 1007; *Sands*, 590 A.2d at 763–64. Nevertheless, there does exist at least one Pennsylvania

Superior Court case other than *Warner, Erie Insurance Exchange v. Danielson*, 423 Pa.Super. 524, 621 A.2d 656 (1993), which can be read for the proposition that courts should entertain an insurance company's declaratory judgment action, despite the fact that the dispute falls within the scope of an arbitration agreement, when the disputed issue is whether a provision of the insurance policy violates public policy. *See id.* at 658. In addition, State Farm brings to our attention a line of Pennsylvania Superior Court cases dealing with declaratory relief that it believes cuts in its favor. *See, e.g., Kester v. Erie Ins. Exch.*, 399 Pa.Super. 206, 582 A.2d 17 (1990); *Daley–Sand v. West Am. Ins. Co.*, 387 Pa.Super. 630, 564 A.2d 965 (1989). We note that these cases are of limited value here, because in the context of evaluating an insurance company's request for declaratory relief, we have previously downplayed their significance as they involved the claimant, rather than the insurer, seeking a judicial forum to argue that provisions in an insurance policy are contrary to public policy. *See McAlister v. Sentry Ins. Co.*, 958 F.2d 550, 554 (3d Cir.1992); *Patterson*, 953 F.2d at 48.

proceed to arbitration in accordance with the policy's arbitration provision. *See id.* The trial court dismissed the insured's objections, reasoning—just as the *Warner* court would later do—that it "could entertain the declaratory judgment action to address the applicability of insurance policy provisions claimed to be contrary to legislative or administrative intent, or against public policy." *Id.* The *Pitts* court reversed the trial court, holding that the parties' dispute should proceed to arbitration, despite the fact that the arbitrator would be called upon to decide whether certain policy provisions were contrary to public policy. *See id.*

State Farm draws our attention to the Pennsylvania Supreme Court's decision in *Windrim,* but in our view, it falls short of offering a clear directive applicable to the question before us. In *Windrim,* the insured sought underinsured motorist benefits under a family member's policy, but the insurance company denied the claim based on the "family vehicle exclusion" in the policy. *See id.* at 1155. The insured argued that the exclusion violated public policy as expressed by the Pennsylvania MVFRL and filed a motion to compel arbitration, while the insurance company filed a counterclaim for a declaratory judgment that the exclusion was valid and enforceable. *See id.* at 1155–56. The opinion of the Pennsylvania Supreme Court indicates that the trial court granted the motion for arbitration, but nevertheless ruled that the exclusion was invalid. *See id.* at 1156. On appeal, the Pennsylvania Supreme Court held the exclusion to be valid, but did not discuss the issue of arbitrability or the trial court's curious decision to grant arbitration on the validity of the exclusion and yet rule on this issue itself. *See id.* at 1156–58.

From State Farm's perspective, *Windrim* is significant because the Pennsylvania Supreme Court addressed the merits of the public policy question regarding the "family vehicle exclusion," even though the parties' dispute was arbitrable. However,

the Pennsylvania Supreme Court in *Windrim* never discussed the jurisdictional aspects of the dispute. While the *Windrim* court's disposition of the case might tacitly recognize that courts may exercise jurisdiction over a declaratory judgment action, even when the parties' dispute falls within the scope of arbitration, the court's failure to address the issue explicitly causes us to hesitate before declaring that *Windrim* authoritatively establishes this principle.

■ The foregoing review of Pennsylvania precedent demonstrates that we lack clear direction on this important issue. Guided by the principle that as a federal court sitting in diversity, our task is to apply state law and not to form it, *see, e.g., Keystone Aeronautics Corp. v. R.J. Enstrom Corp.,* 499 F.2d 146, 147 (3d Cir. 1974), we will decline to make a prediction on this unsettled issue of state law, and instead we will turn to the alternative ground urged by the parties, focusing on whether the dispute falls within the scope of the arbitration clause of Ann's insurance policy.

### B.

■■ Under Pennsylvania law, the determination of whether an issue must be submitted to arbitration depends upon (1) whether the parties entered into an agreement to arbitrate, and (2) whether the dispute falls within the scope of that agreement. *See, e.g., Flightways Corp. v. Keystone Helicopter Corp.,* 459 Pa. 660, 331 A.2d 184, 185 (1975); *Patterson,* 953 F.2d at 46. Furthermore, the scope of arbitration "is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally." *Sley Sys. Garages v. Transp. Workers Union of Am.,* 406 Pa. 370, 178 A.2d 560, 561–62 (1962). The relevant issue here is whether the parties' coverage dispute—specifically, whether Mary Coviello can collect underinsured motorist benefits under her daughter Ann's policy—falls within the scope of the policy's arbitration provision.

The policy's arbitration provision states in pertinent part:

### Section III—Uninsured Motor Vehicle and Underinsured Motor Vehicle Coverage

. . . . .

#### Deciding Fault and Amount—Coverages U, U3, W and W3

Two questions must be decided by agreement between the insured and us:

(1) Is the insured legally entitled to collect compensatory damages from the owner or driver of an uninsured motor vehicle or under-insured motor vehicle; and

(2) If so, in what amount?

If there is no agreement, these two questions shall be decided by arbitration at the request of the insured or us. The arbitrators' decision shall be limited to these two questions.

App., Vol. II, at A–45.

Based upon its reading of Ann's insurance policy, the District Court held that the arbitration clause in the policy "clearly encompasses [the parties'] coverage dispute." App., Vol. I, at A–12. The parties assume, without discussion, that our review of this conclusion is plenary, and there is relevant authority to support this position.[6] However, there also is authority to the effect that we should review the District Court's conclusion for clear error, because the District Court was interpreting contract language in order to discern the parties' intent as to the scope of the arbitration provision. *See, e.g., Paine-Webber Inc. v. Hartmann,* 921 F.2d 507, 510 (3d Cir.1990); *John F. Harkins Co. v. Waldinger Corp.,* 796 F.2d 657, 659–660 (3d Cir.1986). Because we conclude that the District Court committed clear error when interpreting the policy's arbitration

provision, we need not decide whether plenary review might be the more appropriate standard in this setting.

■■■■ It is well settled that when interpreting a contract, the Pennsylvania courts look to the words of the agreement in order to determine the parties' intent. *See, e.g., Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659, 661 (1982). Moreover, when construing an insurance contract, we are bound to give effect to clear and unambiguous language. *See, e.g., Standard Venetian Blind Co. v. Am. Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563, 566 (1983). We are not at liberty to rewrite an insurance contract, or to construe clear and unambiguous language to mean something other than what it says. *See, e.g., Guardian Life Ins. Co. of Am. v. Zerance,* 505 Pa. 345, 479 A.2d 949, 953 (1984).

■■■■ According to the arbitration provision of the policy, arbitration is not triggered unless there is a disagreement involving Question (1) ("Is the insured legally entitled to collect compensatory damages from the owner or driver of an uninsured motor vehicle or underinsured motor vehicle?") or Question (2) ("If so, in what amount?"). Put simply, there must be a disagreement about Coviello's legal entitlement to collect compensatory damages, or about the amount of damages. The title of the provision—"Deciding Fault and Amount"—underscores its limited scope. Neither party has pointed to anything in the language of the arbitration provision that suggests that we should interpret it otherwise.

It is clear to us that neither fault nor amount are at issue in this case. Both parties agree that Leonard was at fault in the accident, and neither party has indicated to us, either in briefs or oral argument,

---

**6.** Both parties neglected to cite any authority regarding the proper standard of review, but our decision in *Pritzker v. Merrill Lynch, Peirce, Fenner & Smith,* 7 F.3d 1110 (3d Cir.

1993), supports the proposition that the District Court's ruling on the scope of the arbitration provision is subject to plenary review. *See id.* at 1113.

that there is any disagreement about the specific amount of damages for which Leonard might be legally liable to his wife, Mary. Instead, what is in dispute is the applicability of the "family vehicle exclusion" in Ann's insurance policy and whether Ann's policy casts a wide enough net to cover the situation at hand. But that coverage question is separate and distinct from the legal question of whether Coviello is "legally entitled to collect compensatory damages" from her husband, Leonard. Therefore, based on the unambiguous language of the policy, the dispute in this case does not appear to fall within the scope of the arbitration provision.[7]

Coviello urges, however, that the Pennsylvania Supreme Court has endorsed a broad reading of arbitration provisions dealing with underinsured motorist coverage in automobile insurance contracts. See, e.g., Borgia, 750 A.2d at 850 n. 10 (observing that the Pennsylvania Supreme Court's approach to underinsured motorist arbitration provisions "is broader than that of most jurisdictions"). For example, in the leading case of Brennan v. General Accident Fire and Life Assurance Corp.,

524 Pa. 542, 574 A.2d 580 (1990), an insurance policy provided for arbitration whenever the parties disagreed about whether the insured was "legally entitled to recover damages from the owners or operator of an underinsured motor vehicle, or do not agree as to the amount of damages."[8] Id. at 582. Based on this language, the Brennan court held that "[t]here is no limit to the jurisdiction of the arbitrators over what issues may be submitted and in fact the policy declares that all disputes between the insurance company and the insured will be arbitrated." Id. at 583. Therefore, the Brennan court reinstated an arbitration award in which the arbitrators had decided several legal questions, including one that the parties had not even raised. See id. at 581–84.

What Coviello fails to note, however, is that when the Pennsylvania Supreme Court has broadly construed underinsured motorist arbitration provisions, the provisions themselves have contained no express limitation on their scope. This was an important fact in the Brennan decision, which specifically noted the "broad scope of authority" that the provision gave the

---

**7.** Although neither party has suggested it, we note that it could be argued, at least in theory, that Question (1) is implicated here based on a disagreement over the definition of "an underinsured motor vehicle," which is the last term in Question (1). However, in our view, this is not a reasonable reading of the arbitration provision, and therefore we decline to credit it. See, e.g., Ins. Co. of Evanston v. Bowers, 758 A.2d 213, 216 (Pa.Super.2000) (stating that when interpreting policy provisions regarding underinsured motorist coverage, "[c]ourts should read policy provisions to avoid ambiguities, if possible, and not torture language to create them"). The arbitration provision clearly pertains to questions of fault and amount. It would distort the meaning of the arbitration provision to say that a disagreement over the definition of "an underinsured motor vehicle"—which has nothing to do with the underlying fault and liability aspects of the accident and thus cannot affect Coviello's legal entitlement to collect compensatory damages—could trigger the provision. Moreover, we find it significant that neither party, after a full opportunity for both briefing and oral argument, has specifically contended

that this case should proceed to arbitration because the parties cannot agree on the definition of "an underinsured motor vehicle." Thus, we are confident that it would violate the parties' contractual intent for us to conclude that the parties' dispute should proceed to arbitration based on a disagreement over the definition of "an underinsured motor vehicle."

**8.** The arbitration clause in Brennan provided that:

> If we and the covered person disagree whether that person is legally entitled to recover damages from the owners or operator of an underinsured motor vehicle, or do not agree as to the amount of damages, either party may make a written demand for arbitration. In this event each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within thirty days, either may request that selection be made by a judge of a court having jurisdiction.

Brennan, 574 A.2d at 582.

arbitrators. *Id.* at 583. The arbitration provision at issue there stated that if there was a disagreement, then arbitration would occur, without explicitly stating that the arbitration should be confined to the areas of disagreement. In fact, we detect this very reasoning at work in an unbroken line of cases stretching back to *National Grange Mutual Insurance Co. v. Kuhn*, 428 Pa. 179, 236 A.2d 758 (1968), in which the Pennsylvania Supreme Court construed an arbitration provision virtually identical to the one in *Brennan,* and held that policy coverage questions fell within the ambit of the arbitration clause. *See id.* at 759–61; *see also Allstate Ins. Co. v. McMonagle,* 449 Pa. 362, 296 A.2d 738, 740 (1972) (following *Kuhn* and holding that policy coverage disputes must be settled via arbitration when arbitration clause contains no express limitation on its scope); *Grange Mut. Cas. Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.,* 438 Pa. 95, 263 A.2d 732, 733 (1970) (same); *Preferred Risk Mut. Ins. Co. v. Martin,* 436 Pa. 374, 260 A.2d 804, 805 (1970) (same); *Allstate Ins. Co. v. Taylor,* 434 Pa. 21, 252 A.2d 618, 619–20 (1969) (same); *Merchants Mut. Ins. Co. v. Am. Arbitration Ass'n,* 433 Pa. 250, 248 A.2d 842, 843–44 (1969) (same); *Harleysville Mut. Ins. Co. v. Medycki,* 431 Pa. 67, 244 A.2d 655, 656–58 (1968) (same).

By contrast, the arbitration clause in Ann's insurance policy *does* contain an express limitation on its scope. As noted above, the clause specifically states that "[t]he arbitrators' decision shall be limited to these two questions," meaning Questions (1) and (2), which describe fault and amount, respectively.[9] This is in stark contrast to the situation in *Brennan,* where the court noted that the policy language placed "no limit to the jurisdiction of the arbitrators." *Brennan,* 574 A.2d at 583. Ann's insurance policy places an explicit limit on the arbitrators' jurisdiction:

they may only decide the questions of fault and amount. Unlike the policy in *Brennan,* Ann's policy does not indicate that "all disputes between the insurance company and the insured will be arbitrated." *Id.* Rather, the policy unambiguously declares that only those disputes involving fault and amount may be arbitrated. Therefore, according to the language of Ann Coviello's insurance policy, we conclude that pure questions of policy coverage—such as the one at issue in this case—are not to be arbitrated. Consequently, we find that the District Court committed clear error in interpreting the arbitration clause as encompassing the parties' coverage dispute.

In reaching this conclusion, we break no new ground under Pennsylvania law. In its most recent pronouncement on arbitration clauses in automobile insurance policies, the Pennsylvania Supreme Court, after discussing the *Brennan* case at length, observed that an insurance company could easily limit the scope of arbitration. *See Borgia,* 750 A.2d at 851. Given that the policy language is the company's, all that would be required is for it to include "different or narrower terms" in the arbitration provision, rather than open-ended terms that place no limit on the arbitrators' jurisdiction. *Id.; see also Kuhn,* 236 A.2d at 761 (noting that an insurance company "may, if it so desires, alter [policy] language to limit arbitration to only those issues it desires to be arbitrable"); *Baverso v. State Farm Ins. Co.,* 407 Pa.Super. 164, 595 A.2d 176, 178 (1991) (observing that if an insurance company wished to exclude particular issues from arbitration, "it could have drafted clear exclusionary language to that effect"); *Aetna Cas. & Sur. Co. v. Hameen,* 758 F.Supp. 1049, 1051 (E.D.Pa.1990) (construing Pennsylvania law, and concluding that if the insurance company "had wished to exclude questions of coverage from the scope of

---

9. Curiously, the District Court failed to quote or acknowledge this limiting language in the arbitration provision, which may, at least in part, explain the District Court's erroneous conclusion that the parties' coverage dispute should proceed to arbitration.

**720**

the arbitration, it could have specifically done so"). Here, State Farm has included "different or narrower terms" in its policy arbitration provision. State Farm's terms unambiguously limit arbitration to questions of fault and amount, and therefore policy coverage disputes such as the one presented in the instant case should be excluded from arbitration.[10] While we recognize that parties should be bound by an agreement to arbitrate, *see, e.g., Taylor,* 252 A.2d at 620, we also must respect the countervailing principle that parties should not be required to arbitrate those issues that fall outside the scope of the agreement, *see, e.g., Flightways Corp.,* 331 A.2d at 185.

Accordingly, we hold that under Pennsylvania law, the parties' coverage dispute in this case does not fall within the scope of the arbitration clause in Ann Coviello's insurance policy. The order of the District Court granting the Coviellos' motion to dismiss will be REVERSED and the case REMANDED for further proceedings consistent with this opinion.

---

**10.** While the limiting language in the arbitration provision of Ann's policy forms the basis for our conclusion that the parties' coverage dispute is not arbitrable, we note that the Pennsylvania Supreme Court recently appears to have retreated somewhat from its suggestion in *Brennan* that all disputes are arbitrable if the arbitration provision does not contain limiting language. In *Borgia,* the Pennsylvania Supreme Court noted that the arbitration provision at issue in *Baverso v. State Farm Ins. Co.,* 407 Pa.Super. 164, 595 A.2d 176 (1991), which was virtually identical to the one in *Brennan,* "arguably ... limits the scope of arbitration to issues arising from the claimant's underlying tort action against the owner or operator of the other vehicle," and would not encompass policy coverage issues. *Borgia,* 750 A.2d at 850 n. 10. The *Borgia* court declined to rule definitively on this issue, however, noting that "[w]hether the Superior Court in *Baverso* improperly extended this Court's holding in *Brennan* is a question that is not before us in this case." *Id.*