**OLD GUARD INSURANCE COMPANY, Appellee,**

v.

**David HOUCK and Alma Houck, Appellants.**

Superior Court of Pennsylvania.

Argued Feb. 27, 2002.

Filed May 20, 2002.

Barbara L. Baldo, Easton, for appellants.

Allan C. Molotsky, Philadelphia, for appellee.

Before: McEWEN, P.J.E., LALLY-GREEN and BENDER, JJ.

BENDER, J.

¶ 1 Alma Houck (Appellant [1]) appeals from the order granting Old Guard Insurance Company's (Old Guard) motion for judgment on the pleadings in Old Guard's declaratory judgment action against Appellant, an insured under an Old Guard automobile insurance policy. Appellant claims that the trial court erred in deter-

---

1. In her brief, Appellant states that her husband died during the litigation in October, 2000. She also represents that this appeal is only on her behalf for her claim of underinsured motorist benefits.

mining that she was not entitled to under-insured motorist (UIM) benefits under the Old Guard policy. For the following reasons, we affirm.

¶ 2 The facts of this case are as follows:

On or about September 26, 1999, David Houck was operating a 1980 Suzuki motorcycle with his wife, Alma Houck, riding as his passenger, when they were involved in an accident with a vehicle operated by Mary Rose. Ms. Rose allegedly crossed the center line and struck the Defendants' motorcycle, causing serious injury to Defendants. Ms. Rose was insured under a personal automobile policy issued by Allstate Insurance Company ("Allstate") with a $100,000 per person/$300,000 per accident policy limit. After an investigation into the incident, Allstate tendered its policy limit.

The Defendants had insured their motorcycle through Guide One Insurance with UIM coverage of $15,000. The Defendants also had a personal automobile policy through Old Guard Insurance Company, which included UIM coverage of $100,000 per person/$300,000 per accident with stacking on three other vehicles owned by the Defendants. After receiving the limits of Ms. Rose's automobile insurance policy from Allstate, the Defendants filed claims for UIM coverage with Guide One and Old Guard.

Old Guard denies that there is any UIM coverage available to the Defendant as a result of an exclusion regarding UIM coverage contained in the Old Guard policy, which precludes recovery by a named insured or his/her spouse living in the same household from an accident in a motor vehicle not insured under the Old Guard policy. As a result, Old Guard filed the instant declaratory judgment action on or about April 11, 2000. Defendants then filed a response on May 15, 2000. Thereafter, Plaintiff filed a reply on September 12, 2000.

Trial Court Opinion (T.C.O.) at 2. Old Guard filed a motion for judgment on the pleadings, and Appellant filed a response. Following argument on the motion, the court granted Old Guard's motion, and Appellant then filed this appeal. She presents two questions for our review:

1. Whether the "household vehicle" exclusion in the policy at issue applies in the instant case so as to bar recovery of underinsured motorist benefits to the Defendant–Appellants where they had purchased and paid for the coverage which they sought to recover, albeit under a separate policy than that which covered the vehicle which they were operating at the time of the accident[?]

2. Whether *Prudential Property and Casualty Ins. Co. v. Colbert*, 1998 U.S. Dist. LEXIS 23225 (W.D.Pa.1998), which is currently pending on appeal before the Pennsylvania Supreme Court, will render the "household vehicle" exclusionary language void as against public policy and thus render this decision null and void[?]

Brief for Appellant at 4.

¶ 3 In the first question presented for our review, Appellant claims that the trial court erred in granting Old Guard's motion for judgment on the pleadings. "Our review of a trial court's decision to grant or deny judgment on the pleadings is limited to determining whether the trial court committed an error of law or whether there were facts presented which warranted a jury trial.... Judgment on the pleadings is proper only where the pleadings [evince] that there are no material facts in dispute such that a trial by jury would be unnecessary." *Pennsylvania Financial Responsibility Assigned Claims Plan v.*

*English,* 541 Pa. 424, 664 A.2d 84, 86 (1995).

¶ 4 Appellant does not argue that the exclusion in the Old Guard policy is ambiguous. Nor does she dispute that when the exclusion is applied, it operates to deny her UIM coverage.[2] Instead, she claims that the court should not have enforced the exclusion in the Old Guard policy under the facts of this case because she was not attempting "to convert the less expensive UIM coverage into liability coverage." Brief for Appellant at 9. She argues that the exclusion should be "declared invalid in this case," ostensibly upon the grounds of public policy. Brief for Appellant at 8.

¶ 5 In relevant part, the exclusion in the Old Guard policy states:

EXCLUSIONS

A. We do not provide Underinsured Motorist Coverage for "bodily injury" sustained:

1. By you while "occupying," or when struck by, any motor vehicle you own which is not insured for this coverage under this policy. . . .

Reproduced Record (R.R.) at 8a. Old Guard claims, and Appellant does not dispute, that the express terms of this clause precludes a claim for UIM benefits for the injuries sustained by Appellant while occupying the motorcycle because it was a motor vehicle owned by her, yet not insured under the Old Guard policy. Nonetheless, Appellant claims that the exclusion should not bar her recovery of UIM benefits because "the coverage she seeks was chosen and paid for her by her and she is not seeking to convert this coverage into liability coverage." Brief for Appellant at

8. Appellant cites *Marroquin v. Mutual Benefit Ins. Co.,* 404 Pa.Super. 444, 591 A.2d 290 (1991), and *Paylor v. Hartford Ins. Co.,* 536 Pa. 583, 640 A.2d 1234 (1994), in support of this argument.

¶ 6 In *Marroquin,* the appellant was injured when a vehicle struck him. The appellant's brother was driving the vehicle. The appellant's brother owned the vehicle and insured it with Mutual Benefit Insurance Company. At the time of the accident, both the appellant and his brother resided with their parents. The parents owned two vehicles that Mutual also insured. The policy covering these vehicles included liability and UIM coverage.

¶ 7 The appellant received benefits from Mutual under the liability coverage of the policy for his brother's vehicle. These benefits were insufficient to compensate the appellant for his injuries. As the policy that his parents carried also covered family members, the appellant then made a claim with Mutual for UIM benefits under his parents' insurance policy. Mutual denied the claim on the basis of an exclusion that stated the following:

In addition, neither 'uninsured motor vehicle' nor 'underinsured motor vehicle' includes any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any 'family member.'

*Marroquin,* 591 A.2d at 292. Mutual denied the appellant's claim for UIM benefits because the vehicle that struck the appellant was owned and regularly used by his brother who was a "family member" as the term was defined within the policy. *See id.*

¶ 8 This Court reversed the trial court's order that granted Mutual's motion for

---

2. UIM coverage is defined as coverage "for persons who suffer injury arising out of the maintenance or use of a motor vehicle and

are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 Pa.C.S. § 1731(c).

summary judgment, and in so doing, adopted the following rule:

[A] policy provision which excludes underinsured motorist benefits when the insured is injured while occupying a vehicle owned by the insured or family member is *presumed to be invalid*. However, a limited exception to this rule involves cases in which the plaintiff is attempting to convert underinsured coverage (first-party coverage) into liability coverage (third-party coverage).

*Id.* at 296. Under this rule, we found that the exclusion was invalid and unenforceable because it was against public policy. *See id.* We reasoned that because the "appellant's underinsured motorist coverage followed him to whatever point that he may have been injured[, and] [t]he only bar to his recovery was that his brother owned the vehicle that injured him[,] ... such a bar was not justified as its purpose was not to convert underinsured motorist coverage into liability coverage." *Id.* at 297.

¶ 9 In *Paylor*, the Pennsylvania Supreme Court expounded upon our holding in *Marroquin* regarding the proscription against converting UIM coverage into liability coverage. *Paylor*, 640 A.2d at 1239–40. In *Paylor*, a husband and wife were killed in a single car accident where the husband was driving a motor home and the wife was a passenger. The couple had insured the motor home under a policy with Foremost Insurance Company. The couple also carried a policy with Hartford Insurance Company for three other cars that they owned.

¶ 10 The wife's daughter, Janet Paylor, as the administratrix of the wife's estate, recovered the limits of the liability coverage under the Foremost policy. Paylor then sought to recover UIM benefits under the Hartford policy. Hartford denied the claim on the basis of a "family car

exclusion contained in the policy, which provided that neither 'uninsured motor vehicle' nor 'underinsured motor vehicle' includes any vehicle '[o]wned by or furnished or available for the regular use of [the named insured] or any family member.'" *Id.* at 1235 (alteration in original).

¶ 11 Paylor initiated a declaratory judgment action against Hartford asserting that the exclusion was invalid because it violated the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1701 et seq., and the public policy of the Commonwealth. Following a bench trial, the trial court entered judgment in favor of Hartford. *See id.* at 1235. Paylor appealed to this Court, and we reversed. *See Paylor v. Hartford Ins. Co.*, 421 Pa.Super. 641, 612 A.2d 539 (1991) (unpublished memorandum). The Pennsylvania Supreme Court granted Hartford's petition for allowance of appeal and reversed, determining that under the facts of the case, the "family car exclusion" was valid and enforceable. *Id.* at 1234.

¶ 12 The court focused its analysis on whether the family car exclusion violates public policy. *See id.* at 1235 (stating that "the dispute centers on whether the provision violates public policy"). The court stated:

Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in [declaring what is or is not in accord with public policy].

*Id.* at 1235 (quotation marks and citations omitted) (alteration in original).

¶ 13 The court considered the fact that Paylor's decedent had made the conscious decision to insure the motor home with a different insurer than Hartford, and for an amount of liability insurance that was ultimately insufficient to compensate for her injuries. *See id.* at 1241. The court went on to reason:

> To permit [Paylor's] decedent's estate to recover the underinsured coverage ... and void the family car exclusion ... is to allow the named insured's estate to convert inexpensively purchased underinsured motorist coverage for the family cars into liability coverage on the motor home when [Paylor's] decedent and her late husband freely chose to insure the motor home for substantially less than the family's other vehicles.

*Id.* (quoting Judge Kelly's Dissenting Memorandum in the underlying Superior Court decision). The foregoing demonstrates that when the liability benefits that one recovers under his or her own insurance policy are insufficient to compensate for damages, courts will enforce an exclusion that precludes the party from recovering UIM benefits under a separately owned policy because otherwise the party would effectively be converting UIM coverage in one policy into liability coverage for the party's other vehicle.

¶ 14 The court distinguished the case before it from the facts in *Marroquin* on the basis that the appellant in *Marroquin* was not a named insured on his brother's liability policy. *See Paylor*, 640 A.2d at 1240–41. However, Paylor's decedent was a named insured on both the liability policy for the motor home and the liability and UIM policy for the other vehicles.

> [She] and her late husband made a conscious decision to insure the motor home with a different insurer for substantially less coverage than they had obtained on their other automobiles insured by [Hartford]. It was well within their power to purchase as much or more liability insurance on the motor home from Foremost Insurance Company as they had purchased on their private automobiles insured by [Hartford].

*Id.* at 1241 (second and third alteration in original) (quoting Judge Kelly's Dissenting Memorandum in the underlying Superior Court decision). Thus, the court held "that the facts of this case fall within the limited exception recognized in *Marroquin* which permits the family car exclusion to be enforced in cases where the plaintiff is attempting to convert underinsured motorist coverage into liability coverage." *Id.*

¶ 15 Since our Supreme Court decided *Paylor* in 1994, it has "expanded the applicability of the 'household exclusion' " in three subsequent cases. *Eichelman v. Nationwide Ins. Co.*, 551 Pa. 558, 711 A.2d 1006 (1998). *See also Hart v. Nationwide Ins. Co.*, 541 Pa. 419, 663 A.2d 682 (1995); *Windrim v. Nationwide Ins. Co.*, 537 Pa. 129, 641 A.2d 1154 (1994). Old Guard, of course, relies on the precedent established in these cases, as these cases expanded the applicability of the household exclusion in cases factually similar to the instant case. Somewhat surprisingly, Appellant's counsel in this case has presented us with a brief that does not cite any of these cases and instead wholly ignores them.

¶ 16 In *Windrim*, Allen Windrim was injured in an accident that occurred while he was driving an uninsured automobile that he owned. *Windrim*, 641 A.2d at 1155. Windrim resided with his mother who had an automobile insurance policy with Nationwide Insurance Company. The policy included UIM coverage, and Windrim qualified as an insured under the policy because he was a relative living with his mother. However, Nationwide denied UIM benefits based upon an exclusion in the policy that stated:

This Uninsured/Underinsured Motorists insurance does not apply as follows:

. . . .

4. It does not apply to bodily injury suffered while occupying or from being hit by a motor vehicle owned by you or a relative living in your household, but not insured for Uninsured or Underinsured Motorists coverage under this policy.

*Id.*

¶ 17 Windrim filed a motion to compel arbitration, and Nationwide filed an answer and a counterclaim for declaratory judgment. The trial court granted Windrim's motion to compel arbitration and denied Nationwide's counterclaim. Nationwide appealed to this court and we affirmed. *See Windrim v. Nationwide,* 412 Pa.Super. 155, 602 A.2d 1356 (1992). The Pennsylvania Supreme Court granted Nationwide's petition for allowance of appeal and reversed. *See Windrim,* 537 Pa. 129, 641 A.2d 1154.

¶ 18 The court noted that Windrim "never argued that the exclusionary language in his mother's policy [was] unclear or ambiguous ... [but rather] that the provision [was] void as applied to him because it violates public policy." *Id.* at 1157. In regard to this public policy argument, the court stated the legislative intent behind the MVFRL:

[T]he legislative history of the MVFRL indicates that the primary concerns of the General Assembly in repealing the No-fault Act and enacting the MVFRL were the spiraling cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways.

*Id.* at 1158. The court concluded that if it were to accept Windrim's argument, it would serve as a disincentive to drivers to insure their vehicles. *See id.* The court found Judge Popovich's dissent in *Windrim* to be persuasive wherein he opined as to what might be the potential consequence of accepting the argument advanced by Windrim:

[A] possible result ... is that many individuals owning several vehicles will purchase coverage for only one of them. Likewise, relatives living with an insured will be less inclined to purchase insurance for their vehicles, instead seeking uninsured motorist coverage under their relative's insurance policy.

*Id.* (quotation marks omitted) (quoting *Windrim,* 602 A.2d at 1360 (Popovich, J., dissenting)). Thus, the court recognized that relatives residing within a household might decide not to purchase liability insurance based in part upon the UIM coverage carried by other relatives within the household. The court concluded that "the General Assembly did not envision nor intend such abuses of the system when it enacted the MVFRL." *Id.*

¶ 19 In *Hart v. Nationwide Ins. Co.,* 541 Pa. 419, 663 A.2d 682 (1995), the Supreme Court issued a *per curiam* order citing *Windrim* as the grounds for its reversal of this Court's decision. Justice Cappy dissented and concluded that *Windrim* did not control the outcome of the case. In so doing, he summarized the facts as follows:

In the instant matter, Hart sustained serious injuries when the vehicle he owned and operated was struck by a vehicle being driven by an intoxicated individual. Hart recovered the policy limits of $15,000 from the other driver's insurance carrier. At the time of the accident, Hart himself was insured under a policy of insurance issued by Pennsylvania National Insurance Company. Although Hart's insurance policy was in compliance with the law, he had chosen not to purchase uninsured and underinsured motorist coverage in accordance with the amendments to the

MVFRL which became effective July 1, 1990. However, Hart's daughter, who resided with Mr. Hart and his wife, was insured under a separate policy of insurance which did provide un/underinsured coverage. Hart thus sought underinsured motorist benefits under his daughter's policy of insurance issued by Nationwide. Nationwide denied coverage on the basis of the following exclusion in the Underinsured section of the Nationwide policy:

This coverage does not apply to:

Bodily injury suffered while occupying a motor vehicle owned by you or a relative but not insured for Underinsured Motorists coverage under this policy; nor to bodily injury from being hit by any such motor vehicle.

The matter then proceeded to arbitration following which the arbitrators held that the exclusion was void, awarding Hart $300,000. The Court of Common Pleas subsequently denied Nationwide's Petition to Modify, Vacate or Correct the Arbitrators' decision. On appeal, the Superior Court affirmed also holding that the exclusion was here void as against the public policy of the MVFRL. *Hart,* 663 A.2d at 682 (Cappy, J., dissenting) (footnote omitted).

¶ 20 In his dissent, Justice Cappy argued that it was "incumbent upon this Court to fully analyze the instant matter based upon the unique facts presented." *Id.* at 683. He distinguished the facts from those in *Windrim* because the driver in *Windrim* was driving an uninsured vehicle whereas Hart carried insurance in compliance with the MVFRL. *See id.* More importantly, Justice Cappy recited the rule discussed in *Paylor* regarding the household exclusion, namely that:

[G]enerally such provisions are invalid as against the public policy of the MVFRL but ... the enforcement of any

such exclusion is dependent upon the specific facts presented. Based upon the facts presented there, we held that a limited exception to this general rule of invalidating such an exclusion exists where, as there, one is attempting to convert underinsured and/or uninsured motorist coverage into liability insurance.

*Id.* Justice Cappy went on to note that "no such attempted conversion is at issue in the case *sub judice* " and, therefore, a full analysis was required. *Id.*

¶ 21 Justice Cappy recognized that the court was enforcing a household exclusion despite the fact that Hart was not attempting to convert UIM coverage into liability coverage. Thus, the court made a slight departure from the rule set forth in *Marroquin* and *Paylor* and thereby expanded the enforceability of the household exclusion.

¶ 22 In *Eichelman v. Nationwide Ins. Co.,* 551 Pa. 558, 711 A.2d 1006 (1998), a unanimous court squarely addressed the validity of the household exclusion outside the framework of analysis established in *Marroquin* and *Paylor.* In *Eichelman,* Jonathan Eichelman was injured when a truck struck him while he was riding his motorcycle. Eichelman received the limits of liability benefits available under the truck owner's insurance policy. However, this amount was insufficient to compensate Eichelman for his damages.

¶ 23 Aegis Security Insurance Company insured Eichelman's motorcycle, but he had waived UIM coverage under that policy. At the time of the accident, Eichelman resided with his mother and her husband. They carried insurance policies with Nationwide Insurance Company. These policies covered Eichelman because he was a relative and resided in the household. Eichelman made a claim for UIM benefits

under these policies, and Nationwide denied the claim based on a household exclusion that stated:

COVERAGE EXCLUSIONS

This [underinsured] coverage does not apply to:

\*    \*    \*    \*    \*    \*

6.    Bodily injury suffered while occupying a motor vehicle owned by you or a relative not insured for Underinsured Motorists coverage under this policy; nor to bodily injury from being hit by any such motor vehicle.

*Id.* at 1007.

¶ 24 Eichelman filed a complaint against Nationwide requesting a declaratory judgment that he was entitled to UIM benefits under the Nationwide policies and that the household exclusion was void as against public policy. After the close of discovery, the trial court granted Eichelman's motion for summary judgment. This Court reversed, finding that the household exclusion was valid and enforceable. *See Eichelman v. Nationwide*, 453 Pa.Super. 688, 683 A.2d 316 (1996) (unpublished memorandum).

¶ 25 On appeal before the Pennsylvania Supreme Court, the court noted that Eichelman did not dispute that the express terms of the exclusion operated to bar his recovery of UIM benefits under the policies. *Eichelman*, 711 A.2d at 1008. Thus, the case "center[ed] on whether the 'household exclusion' provision violate[d] public policy." *Id.* This is the precise issue that was before this Court in *Marroquin*, and the Supreme Court in *Paylor, Windrim*, and *Hart.* Conspicuously absent from the Supreme Court's analysis in *Eichelman* is any mention of the presumption that the household exclusion was invalid as against public policy and that an exception to this rule existed for cases in which a claimant sought to convert UIM

benefits into liability benefits. Instead, the court stated "that a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy [and] this Court is mindful that public policy is more than a vague goal which may be used to circumvent the plain meaning of the contract." *Id.* at 1008. The court went on to conduct a three-prong analysis to determine whether the household exclusion violated the public policy of the Commonwealth. *See id.* at 1008–10.

¶ 26 First, because "the term 'public policy' is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy ... In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy." *Id.* at 1008 (quoting *Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 648 A.2d 755 (1994)). Accordingly, the court surveyed its recent three prior decisions, *Paylor, Windrim*, and *Hart*, and concluded that "this Court's case law does not suggest that there is a unanimity of opinion against enforcement of the 'household exclusion' language contained in the two policies issued by appellee." *Id.* at 1009.

¶ 27 Next the court examined whether the household exclusion is contrary to the "public health, safety, morals, or welfare of the people." *Id.* The court concluded that it could not "discern, nor does appellant express, how the 'household exclusion' language in the two policies issued by appellee is so obviously against the public health, safety, morals or welfare of the people that the clause should not be enforced on public policy grounds." *Id.*

¶ 28 Third, and finally, the court sought to determine whether the household exclusion contravened the legislative intent behind the MVFRL, which is "to stop the spiralling costs of automobile insurance in the Commonwealth." *See id.*

> That purpose, however, does not rise to the level of public policy overriding every other consideration of contract construction. As this Court has stated, **there is a correlation between premiums paid by the insured and the coverage the claimant should reasonably expect to receive.** Here, appellant voluntarily chose not to purchase underinsured motorist coverage. In return for this choice, appellant received reduced insurance premiums.... Thus, this Court concludes that giving effect to the 'household exclusion' in this case further **thers the legislative policy behind underinsured motorist coverage in the MVFRL since it will have the effect of holding appellant to his voluntary choice.**

*Id.* at 1010 (emphasis added).

¶ 29 The court concluded by analyzing the potential negative impact were it to declare the household exclusion invalid. As it did in *Windrim,* the court again recognized that relatives residing within a household might base their decision to purchase insurance on whether other relatives within the household carry UIM coverage on their vehicles.

> If appellant's position were accepted, it would allow an entire family living in a single household with numerous automobiles to obtain underinsured motorist coverage for each family member through a single insurance policy on one of the automobiles in the household. If this result were allowed, it would most likely result in higher insurance premiums on all insureds (even those without family members living at their resi-

dence) since insurers would be required to factor expanded coverage cost into rates charged for underinsured motorist coverage.

*Id.* at 1010. The court went to hold that the exclusion was a valid bar to Eichelman's claim for UIM benefits. *See id.* (stating that "it is only in the clearest of cases that a court may make an alleged public policy the basis of judicial decision ... [and t]he case *sub judice* is not the clearest of cases").

¶ 30 In the instant case, we are convinced that the court's holding in *Eichelman* bars Appellant from recovering UIM benefits from Old Guard. Whereas in this case, Appellant and her husband purchased UIM coverage on the motorcycle, they only purchased $15,000 in UIM coverage and they purchased it from an insurer other than Old Guard. They now seek UIM benefits from Old Guard for an insurance policy that provides "$100,000 per person/$300,000 per accident with stacking on three other vehicles." T.C.O. at 2. Were we to accept Appellant's position, a family with multiple vehicles could insure one vehicle with one insurer for a high amount of UIM coverage and insure the remaining vehicles with another insurer for minimum UIM coverage, and yet still recover from the former insurer when the latter's benefits prove inadequate when an accident occurs.

¶ 31 The inequity of this situation is amplified when one considers the types of vehicles involved. Surely, the amount of the premium that an insured pays for UIM coverage bears a correlation to the amount of risk assumed for insuring someone while operating certain types of vehicles. To state the obvious, one is more likely to suffer greater injury in an accident when operating a motorcycle than when operating a large sport utility vehicle. Generally then, one would expect an insurer to de-

**568**

mand higher UIM premiums to insure against the risk of greater injury for the operator of the motorcycle. Again, were we to accept Appellant's position, a party could purchase a minimal amount of UIM coverage for a motorcycle from one insurer and purchase a much higher amount of UIM coverage for an automobile from another insurer, and yet still collect UIM benefits from the latter when the former's benefits prove inadequate.

¶ 32 If such a result were permitted, it would certainly result in higher insurance premiums on all insureds within the Commonwealth because insurers would have to collect premiums for unknown potential risks that they did not contract for. As the court stated in *Eichelman*, "the above analysis demonstrates that allowing the 'household exclusion' language to stand supports the legislatively stated public policy of reducing insurance costs." *Eichelman*, 711 A.2d at 1010. This case is far from "the clearest of cases" and, therefore, we do not find that the household exclusion in this case violates public policy. Accordingly, we hold that a person who carries inadequate UIM coverage with one insurer is not entitled to recover UIM benefits from a second insurer where a clear and unambiguous household exclusion in the second insurer's policy precludes recovery of UIM benefits for damages suffered while occupying a vehicle owned by the insured and not insured for UIM coverage under the policy with the second insurer.

¶ 33 Finally, we address the second question raised by Appellant, namely that we should remand this case to await the outcome of *Prudential Property and Casualty Ins. Co. v. Colbert*, 1998 U.S. Dist. LEXIS 23225 (W.D.Pa.1998). According to Appellant, the case involves the precise issue before us in the instant appeal, and on appeal to the Circuit Court of Appeals for the Third Circuit, the court certified

questions regarding this issue to the Pennsylvania Supreme Court. If indeed the issue is precisely the same, then Appellant may of course file a petition for allowance of appeal with the Pennsylvania Supreme Court if she believes that she is aggrieved by our decision here. Appellant cites no authority that would indicate that that would be anything other than the proper procedure to follow.

¶ 34 Order **AFFIRMED.**