**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.,**
**Plaintiff,**

v.

**Leonard & Mary COVIELLO and**
**Ann Coviello, Defendants.**

No. 3:CV–99–0585.

United States District Court,
M.D. Pennsylvania.

Sept. 13, 2002.

Teresa Ficken Sachs, Britt, Hankins, Schaible & Moughan, Philadelphia, PA, for plaintiff.

Johanna L. Gelb, Gelb Law Firm, Scranton, PA, for defendants.

### MEMORANDUM

VANASKIE, Chief Judge.

On April 12, 1999, State Farm Mutual Automobile Insurance Company ("State Farm") filed a complaint in this Court seeking a declaration that Leonard and Mary Coviello were not entitled to underinsured motorist coverage under their daughter's State Farm policy. State Farm contends that, because at the time of their accident the Coviellos were occupying their own car, and not their daughter's, coverage is barred by a "family vehicle exclusion" in the State Farm policy. On April 13, 2001, the Coviellos filed a motion for summary judgment, asserting that Pennsylvania courts have already determined that the family vehicle exclusion upon which State Farm relies is invalid and unenforceable. On April 16, 2001, State Farm filed its motion for summary judgment, contending that the type of family vehicle exclusion at issue here is valid and enforceable. Because the family vehicle exclusion clearly bars recovery here and is not violative of or contrary to public policy, State Farm's motion for summary judgment will be granted and the Coviellos' motion for summary judgment will be denied.

### I. BACKGROUND [1]

On June 23, 1998, Mary Coviello was injured in a single-vehicle accident which occurred in Dickson City, Pennsylvania. Mary Coviello was a passenger in an automobile operated by her husband, Leonard Coviello. Mary and Leonard Coviello were the registered owners of the automobile involved in the accident. Mary Coviello made a liability claim against Leonard Coviello under their own State Farm policy and received the $100,000 liability limits under that policy.

On the date of the accident, Ann Coviello, daughter of Mary and Leonard Coviello, resided in their household. Ann Coviello had her own automobile and was the named insured on a separate insurance policy that was also issued by State Farm.

Mary Coviello sought underinsured motorist ("UIM") benefits under Ann Coviello's policy based upon Mary's contention that the vehicle that she and her husband

---

1. This factual recitation is based upon the parties' stipulation filed on August 31, 1999.

Leonard owned, and which Mary was occupying at the time of the accident, qualifies as an "underinsured motor vehicle" under Ann Coviello's policy. State Farm denied the claim for UIM benefits, relying upon the following policy provision: "An underinsured motor vehicle does not include a land motor vehicle ... (2) furnished for the regular use of you, your spouse, or any relative ...." Leonard and Mary Coviello are "relatives" of Ann for purposes of this policy provision. The Coviellos argued that this "family-vehicle exclusion" was invalid and unenforceable as contrary to public policy. The Coviellos also contended that the parties' dispute was subject to arbitration.

Consistent with their position that this controversy was subject to arbitration under the terms of the policy, the Coviellos moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Finding that the dispute was indeed arbitrable, this Court granted the Coviellos' motion to dismiss by Memorandum and Order entered on November 22, 1999. State Farm's motion for reconsideration was denied on February 17, 2000, and State Farm then appealed to the United States Court of Appeals for the Third Circuit. In an Opinion filed on November 29, 2000, the Court of Appeals ruled that the parties' coverage dispute did not fall within the scope of the arbitration clause in the State Farm policy, and remanded this matter for further proceedings. 233 F.3d 710 (3d Cir.2000).

On remand, the parties agreed that resolution of this case was amenable to cross-motions for summary judgment. The parties have fully briefed the pertinent issues, and the matter is ripe for decision.

## II. *DISCUSSION*

There is no dispute as to the underlying facts. There is also no dispute that the terms of the policy exclusion at issue here clearly and unambiguously bar recovery of UIM benefits. As the Third Circuit recognized, "[t]he only way that [Mary] Coviello can succeed on her claim is if the [family vehicle] exclusion is invalidated." *Id.* at 714. Moreover, as the Third Circuit further explained, "the exclusion should be invalidated only if, under the circumstances of a particular case, it violates public policy as expressed by the Pennsylvania [Motor Vehicle Financial Responsibility Law]." *Id.* Thus, the dispositive question here is whether the family vehicle exclusion violates public policy as expressed by the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S.A. §§ 1701, *et seq.*, under the particular circumstances of this case.

In this diversity-bound action, the task of the federal court is to ascertain how the state's highest court would rule if presented with the same facts. *See 2–J Corp. v. Tice*, 126 F.3d 539, 541 (3d Cir. 1997). In making this determination, "decisions of the Pennsylvania Supreme Court are, of course, the authoritative source." *State Farm Mut. Auto. Ins. Co. v. Coviello*, 233 F.3d 710, 713 (3d Cir.2000). If the Pennsylvania Supreme Court has not decided the precise issue presented to the federal court, it must consider pertinent decisions of the lower state courts, opinions of federal appeals and district courts, and other authoritative sources. *Id.* As explained in *Tice*, 126 F.3d at 541 (quoting *Aloe Coal Co. v. Clark Equipment Co.*, 816 F.2d 110, 117 (3d Cir.1987)), "[i]n attempting to forecast state law, we must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand."

The Coviellos do not cite a controlling precedent of the Pennsylvania Su-

preme Court in support of their position. Instead, they rely upon a panel opinion of the Pennsylvania Superior Court in *Marroquin v. Mutual Benefit Ins. Co.*, 404 Pa.Super. 444, 591 A.2d 290 (1991). In *Marroquin*, the plaintiff was injured when struck by an automobile owned and operated by his brother. At the time of the accident, both the plaintiff and his brother lived with their parents. Plaintiff's brother had procured automobile insurance on the accident vehicle from the Mutual Benefit Insurance Company. The parents had a separate policy issued by Mutual Benefit that covered two of their vehicles and provided liability coverage for family members. The parents' policy also included UIM coverage. After obtaining the policy limits on his brother's policy, plaintiff made claim for UIM benefits under the parents' policy. Mutual Benefit refused to make payment, citing a policy provision that excluded from the definition of an "underinsured motor vehicle" a vehicle "[o]wned by or furnished or available for the regular use of you or any family member." *Id.* 404 Pa.Super. at 446–47, 591 A.2d at 292. Recognizing that the express policy terms barred coverage, plaintiff sought a determination that the "Family Car Exclusion" was void as against public policy and contrary to both the letter and spirit of the MVFRL. While recognizing that its prior precedents had found that similar exclusions did not violate public policy or the MVFRL, *see, e.g., Wolgemuth v. Harleysville Mutual Ins. Co.*, 370 Pa.Super. 51, 535 A.2d 1145 (1988) (*en banc*); *Newkirk v. United Services Auto. Asso.*, 388 Pa.Super. 54, 564 A.2d 1263 (1989), the panel in *Marroquin* found that there was a presumption of invalidity for a family car exclusion, subject to a "limited exception" where the factual circumstances

indicated that "the plaintiff is attempting to convert underinsured coverage (first-party coverage) into liability coverage (third-party coverage)." *Id.* at 455–56, 591 A.2d at 296. The court distinguished *Wolgemuth* and *Newkirk* on the ground that they involved a single policy under which the claimant sought to recover both third-party liability limits and UIM benefits. In *Wolgemuth* and *Newkirk*, inexpensive UIM coverage was being used to supplement limited liability coverage. In *Marroquin*, by way of contrast, there were two policies of insurance at issue. Rejecting the contention that an invalidation of the family car exclusion would allow "several family members to manipulate the amount of insurance that they buy under several policies so as to substitute underinsured motorist coverage for liability coverage," *id.* at 457, 591 A.2d at 297, the court ruled that "[u]nder circumstances such as those present in this case, we will not infer, without more, that the parties 'are somehow acting as one and attempting to convert underinsured motorist coverage into liability coverage.'" *Id.*

The *Marroquin* panel relied heavily on the decision of the Minnesota Court of Appeals in *DeVille v. State Farm Mut. Auto. Ins. Co.*, 367 N.W.2d 574 (1985).[2] In *DeVille*, the court invalidated a family car exclusion where the wife-plaintiff had been injured while riding as a passenger on her husband's motorcycle, had recovered the limits of her husband's liability insurance, and then sought UIM benefits from a separate policy that she had purchased for her own automobile. A central premise of the ruling in *DeVille* was the determination that UIM protection "is classic 'first-party coverage' and it should follow [the insured] wherever she may be located when in-

---

**2.** Pennsylvania courts apparently often referred to Minnesota law for guidance in view of the similarity of the two states' motor vehi-

cle insurance legislation. *See Marroquin*, 404 Pa.Super. at 449–50, 591 A.2d at 293.

jured." 367 N.W.2d at 577. Recognizing the centrality of this premise, the panel in *Marroquin* stated:

> When describing DeVille's insurance the pivotal language used by the Minnesota court is that "[t]his is 'first-party coverage,' and it should follow her wherever she may be located when injured." In the instant case there is no dispute that appellant's underinsured motorist coverage followed him to whatever point that he may have been injured. The only bar to his recovery was that his brother owned the vehicle that injured him. Under the facts of this case, such a bar was not justified as its purpose was not to convert underinsured motorist coverage into liability coverage.

404 Pa.Super. at 457, 591 A.2d at 297.

The premise that UIM coverage is "portable" was also critical to the determination that a "regularly used non-owned car" exclusion was void as against public policy made in *Burstein v. Prudential Property & Cas. Ins. Co.*, 742 A.2d 684 (Pa.Super.1999), another intermediate appellate court decision upon which the Coviellos have relied. Mrs. Burstein was a passenger in a vehicle supplied by her employer and being operated by her husband at the time of the accident. Unknown to Mrs. Burstein, the employer had not provided UIM coverage for this car. After recovering the liability limits from the negligent third party tortfeasor, Mrs. Burstein sought recovery of UIM benefits under a policy covering three vehicles owned by the Bursteins. Prudential refused to make payment, relying upon an exclusion that provided as follows: "We will not pay for bodily injury to you or a household resident using a non-owned car not insured under this part, regularly used by you or a household resident." In declaring this exclusion void, the plurality opinion in *Burstein* observed that "the public policy we find most persuasive is that underinsured motorist coverage is

first-party coverage and therefore necessarily follows the person, not the vehicle." *Id.* at 688.

The Coviellos essentially argue that Mary Coviello qualifies as an insured under her daughter's UIM coverage and that coverage should follow her, regardless of the fact that she was occupying a vehicle specifically exempted from Ann's UIM coverage by virtue of the family car exclusion. If the Pennsylvania Supreme Court had attached as much significance to the portability of UIM coverage, the Coviello's may be entitled to prevail.

Significantly, however, the Pennsylvania Supreme Court, in a four to one ruling, reversed the Superior Court's holding in *Burstein*. See *Burstein v. Prudential Property and Casualty Ins. Co.*, 801 A.2d 516 (2002). In reversing the Superior Court, the Supreme Court recognized that the exclusion at issue clearly and unambiguously barred UIM coverage and further observed that a "circumspect posture" must be assumed when determining whether a clear and unambiguous policy exclusion violates public policy. As Chief Justice Zappala wrote:

> "Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term 'public policy' is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy.... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy.

The courts must be content to await legislative action."

\* \* \* \* \* \*

Pertaining to the public policy concerns of the MVFRL, our Court has repeatedly spelled out that "[t]he repeal of the No–Fault Act and the enactment of the MVFRL reflected a legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways." The legislative concern for the increasing cost of insurance is the public policy that is to be advanced by statutory interpretation of the MVFRL. This reflects the General Assembly's departure from the principle of "maximum feasible restoration" embodied in the now defunct No–Fault Act.

*Id.* at 519–20

The court acknowledged that the exclusion at issue served as a restraint on the portability of UIM coverage. *Id.* at 517 ("We granted *allocatur* to determine whether the 'regularly used, non-owned car' exclusion and its ensuing contractual restraint on [UIM] coverage portability violate public policy."). The court ruled that the limitation on portability did not warrant invalidation of the contract provision. Observing that the UIM insurer did not have any opportunity to assess the risk of injury that may be posed by the type of vehicle supplied by Mrs. Burstein's employer, the Court found that "it is illogical to conclude that the benefits should follow Mrs. Burstein without proper compensation to the insurer." *Id.* at 522. The Court also stated that "voiding the exclusion would frustrate the public policy concern for the increasing costs of automobile insurance, as the insurer would be compelled to underwrite unknown risks that it has not been compensated to insure." *Id.* at 520–21. Thus, the Court ruled that "the regularly used, non-owned car exclusion

and its contractual restraint on UIM portability comport with the underlying policies of the MVFRL . . . ." *Id.* at 522.

The Supreme Court's decision in *Burstein* eviscerates the central premise of *Marroquin's* presumption that a contractual restraint on the portability of UIM coverage is invalid. Essentially, both the exclusion at issue in *Burstein* and that at issue in *Marroquin* did not allow the UIM coverage to follow the person to the circumstances of the accident. *Marroquin*, with its reliance on the decision of the Minnesota Court of Appeals in *DeVille*, determined that a contractual restraint on the portability of UIM coverage was inimical to legislative intent and contrary to public policy. The Pennsylvania Supreme Court's ruling in *Burstein* destroys this premise, recognizing that a contractual restraint on portability is valid because it is consistent with the legislature's intention to curb increases in the costs of automobile insurance.

In this case, Mrs. Coviello seeks to have applied to a motor vehicle accident involving an automobile of which she was the registered owner the UIM coverage afforded by her daughter's policy on a separate vehicle. The "family car exclusion" unambiguously precludes such portability of the UIM coverage, and the Supreme Court's holding in *Burstein* strongly indicates that, were it confronted with this issue, the Pennsylvania Supreme Court would sustain the validity of the family car exclusion.

Justice Saylor, in his dissenting opinion in *Burstein*, noted that the Pennsylvania Supreme Court had initially appeared to endorse the approach taken in *Marroquin*, citing *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234 (1994). In *Paylor*, Mrs. Dymond was killed in a single-vehicle accident involving a motor home operated by her husband and owned jointly by her and

her husband. This vehicle was covered under a policy issued by Foremost Insurance Company. Mr. and Mrs. Dymond also maintained a policy of automobile insurance with the Hartford Insurance Company on three other vehicles that they owned. After collecting the liability limits from Foremost, the Estate of Mrs. Dymond sought to recover under the UIM coverage of the Hartford policy. "Hartford denied the claim on the basis of a family car exclusion, which barred coverage for any vehicle '[o]wned by or furnished or available for the regular use of [the named insured] or any family member.'" *Id.* at 586, 640 A.2d at 1235. While seeming to recognize a general rule that family car exclusions are invalid as against the policy of the MVFRL, the Court held that the exclusion would be enforceable "where a plaintiff is attempting to convert underinsured coverage into liability coverage...." *Id.* at 595, 640 A.2d at 1240. The Court ruled that where all policies are in the name of the same insureds, the family car exclusion would be enforced because inexpensive UIM coverage is being converted into liability coverage.

Even if the Supreme Court had not retreated from the *Marroquin* approach, the holding in *Paylor* suggests that the state's high court would not invalidate the family car exclusion at issue here. The plaintiff in *Marroquin* was not a vehicle owner. In this case, however, as in *Paylor*, the party seeking UIM coverage was occupying a vehicle in which she had an ownership interest at the time of the accident. Thus, in *Paylor* and in this case, the plaintiff was in a position to control the amount of liability coverage for the accident vehicle and sought to supplement that inadequate coverage with UIM coverage on other family vehicles. The fact that UIM coverage in this case is afforded by a resident daughter's policy, as opposed to a separate policy procured by Mary Coviello, appears to be an immaterial distinction.

In any event, even the Pennsylvania Superior Court has recognized that the Supreme Court expanded the enforceability of the household vehicle exclusion beyond the context of an inferred attempt to convert UIM coverage into liability coverage. *See, e.g., Old Guard Ins. Co. v. Houck*, 801 A.2d 559 (Pa.Super.2002). In *Houck*, the UIM claimants were injured when a motorcycle operated by the husband claimant and on which the wife claimant was a passenger was struck by a third party tortfeasor. After obtaining the liability limits from the insurer of the third party tortfeasor and the UIM limits on the motorcycle, the wife claimant sought coverage under the UIM policy provisions governing three other vehicles owned by her. The insurer declined to make payment, relying upon a "household vehicle" exclusion that clearly and unambiguously barred coverage. The claimants contended that the provision was invalid, but the Superior Court disagreed. Surveying the Pennsylvania Supreme Court case law since *Paylor* was decided in 1994, the Court indicated that the Supreme Court had moved from a presumption that a household exclusion was invalid as against public policy to a position "'that a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed policy ... [that] is more than a vague goal which may be used to circumvent the plain meaning of the contract.'" *Id.* at 566. Embracing the "cost containment rationale," the Superior Court found that invalidating a family vehicle exclusion under the circumstances presented there would encourage "a family with multiple vehicles [to] insure one vehicle with one insurer for a high amount of UIM coverage and insure the remaining vehicles with another insurer for minimum UIM coverage, and yet still recover from the former insurer when the latter's benefits prove inadequate when an accident

occurs." *Id.* at 567. Specifically, the court held "that a person who carries inadequate UIM coverage with one insurer is not entitled to recover UIM benefits where a clear and unambiguous household exclusion in the second insurer's policy precludes recovery of UIM benefits for damages suffered while occupying a vehicle owned by the insured and not insured for UIM coverage under the policy with the second insurer." *Id.* at 568.

In this case, Mrs. Coviello was an owner of the vehicle she was occupying at the time of her accident. The liability limits on that vehicle proved to be inadequate. The rationale of *Houck* compels the conclusion that Mrs. Coviello cannot turn to her daughter's insurer to supplement the liability limits on her own vehicle. The issue, as recognized in *Houck*, is no longer whether there has been some attempt to convert UIM coverage into liability coverage. The question, instead, is whether the family vehicle exclusion is consistent with the legislative intent " 'to stop the spiraling costs of automobile insurance in the Commonwealth.' " *Id.* at 567.

The Superior Court in *Houck* relied upon *Eichelman v. Nationwide Ins. Co.,* 551 Pa. 558, 711 A.2d 1006 (1998). The plaintiff in *Eichelman* was injured when the motorcycle he owned and operated was struck by a third party. The insurer for the third party paid the liability limits to the plaintiff. The motorcycle was insured, but the plaintiff had waived UIM coverage. He thus sought recovery under the UIM provisions of automobile insurance policies carried by his mother and her husband, with whom he resided. Nationwide relied upon a family car exclusion to deny coverage. As the Court observed in *Houck*, "[c]onspicuously absent from the Supreme Court's analysis in *Eichelman* is any mention of a presumption that the household exclusion was invalid as against public policy and that an exception to this rule exist-

ed for cases in which a claimant sought to convert UIM benefits into liability benefits." *Houck,* 801 A.2d at 566. Instead, the court in *Eichelman* applied a three-part analysis to determine whether the policy provision violated public policy. The court indicated that the first factor was whether there was "a unanimity of opinion that the 'household exclusion' language contained in the two policies ... violates public policy." *Eichelman,* 551 Pa. at 564, 711 A.2d at 1009. Citing its decisions in *Paylor, Windrim v. Nationwide Ins. Co.,* 537 Pa. 129, 641 A.2d 1154 (1994), and *Hart v. Nationwide Ins. Co.,* 541 Pa. 419, 663 A.2d 682 (1995), in which household exclusions were sustained against public policy challenges, the court determined that there was "a lack of unanimity of opinion against the 'household exclusion' language at issue ...." *Id.* at 566, 711 A.2d at 1009.

The second prong of the analysis required the court to "examine whether such language is contrary to the public health, safety, morals or welfare of the people." *Id.* The court summarily answered this question in the negative. *Id.*

The final question in the three-part analysis was whether the household exclusion language was contrary to the legislative intent underlying the MVFRL. *Id.* The court found that giving effect to the exclusion was consistent with the legislative intent of cost containment—plaintiff, having waived UIM coverage, could not look to the UIM coverage carried by a resident relative.

Application of this three-part analysis compels the conclusion that Mrs. Coviello may not look to her daughter's UIM coverage. First, there is plainly a lack of unanimity that the family vehicle exclusion at issue here is invalid. In *Ridley ex rel. Ridley v. State Farm Mut. Auto. Ins. Co.,* 745 A.2d 7 (Pa.Super.1999), the court ruled, *inter alia,* that the daughter-passen-

ger of a motor vehicle owned and operated by her mother could not look to the UIM coverage for a separate vehicle jointly owned by her mother and father and covered by a State Farm policy in light of that policy's family vehicle exclusion identical to that presented here. *Accord, State Farm Mut. Auto. Ins. Co. v. Scheidler*, 78 F.Supp.2d 374 (E.D.Pa.1999); *Troebs v. Nationwide Ins. Co.*, No. 98–CV–3556, 1999 WL 79555, 1999 U.S. Dist. LEXIS 508 (E.D.Pa. Jan. 20, 1999).

Indeed, the Pennsylvania Supreme Court itself reversed, by per curiam order, a Superior Court ruling that had invalidated an exclusion under circumstances indistinguishable from those presented here. *See Sherwood v. Bankers Standard Ins. Co.*, 538 Pa. 397, 648 A.2d 1171 (1994). In that case, the plaintiff was injured while he was a passenger in his own car, just as Mrs. Coviello was a passenger in her own car. Just as in this case, the driver of the car in which the plaintiff was a passenger in *Sherwood* was determined to be negligent, and the plaintiff recovered the liability limits under the policy covering his vehicle. He then sought to recover UIM benefits under a State Farm Policy issued to his resident grandfather. While the Superior Court found that the family vehicle exclusion that is at issue in this case was contrary to public policy, the Pennsylvania Supreme Court, by per curiam order, summarily reversed the Superior Court ruling, citing *Paylor*.

It is thus clear that there is not a unanimity of opinion that the family vehicle exclusion is invalid. On the contrary, it would seem that the Supreme Court has found the exclusion valid under the circumstances presented here.

Under the second step of the *Eichelman* three-prong analysis, it cannot be concluded that the policy language in this case is contrary to the public health, safety, morals or welfare of the people.

Finally, consistent with the Pennsylvania Supreme Court's emphasis on the cost containment rationale for the MVFRL, enforcing the exclusion at issue here would serve the purpose of controlling costs. State Farm did not intend to provide coverage for vehicles that were regularly used by Mrs. Coviello and her husband when it sold UIM coverage to their daughter, Ann. State Farm thus would not have calculated its premium based upon the existence of the parents' car. Denying coverage here serves to assure that the insurance company is paying benefits for risks it has accepted and for which it has been compensated. *See Nationwide Mut. Ins. Co. v. Hampton*, 935 F.2d 578, 586 (3d Cir.1991) ("'If an insured is required to insure against a risk of an undesignated but owned vehicle, or a different and more dangerous type of vehicle of which it has no knowledge, it is thereby required to insure against risks of which it is unaware, unable to underwrite, and unable to charge a premium therefor.'").

### III. CONCLUSION

■ "In light of the primary public policy concern for the increasing costs of automobile insurance, it is arduous to invalidate an otherwise valid insurance contract exclusion on account of that public policy." *Burstein*, 801 A.2d at 520. In this case, the Coviellos have not sustained the difficult burden imposed by the Pennsylvania Supreme Court of showing that the exclusion at issue violates public policy.[3] *Bur-*

---

**3.** The cases other than *Marroquin* and the Superior Court's reversed opinion in *Burstein* upon which the Coviellos also rely are either of no precedential value or otherwise unpersuasive. For example, the Superior Court

opinion in *Prudential Property & Cas. Ins. Co. v. Gisler*, 764 A.2d 1111 (Pa.Super.2000), was reversed by the Pennsylvania Supreme Court on September 5, 2002 on the strength of *Burstein. See Prudential Property & Cas. Ins.*

**410**

*stein* teaches that portability of UIM coverage does not trump the legislature's avowed attempt to curb increasing costs of automobile insurance. The State Farm family vehicle exclusion survives *Eichelman's* three-part analysis. And even under *Paylor*, the attempt to reach Ann's coverage would be viewed as an impermissible conversion of UIM coverage to liability coverage. It is thus clear that the State Farm family vehicle exclusion would not be declared invalid and unenforceable by the state Supreme Court. Accordingly, State Farm's motion for summary judgment will be granted, and the Coviellos' motion will be denied. An appropriate Order follows.

Co. v. *Gisler*, 806 A.2d 854 (Pa.2002) (per curiam). The Common Pleas Court decisions cited by the Coviellos, *Prudential Property & Cas. Ins. Co. v. O'Donnell*, No. 0803, 52 Pa. D. & C.4th 117 Feb. Term, 1999 (Philadelphia

Feb. 28, 2001), and *Nationwide Mut. Ins. Co. v. Catalfu*, No. 14121–1998, 47 Pa. D. & C.4th 282, 2000 WL 33158593 (Erie County, July 14, 2000), pre-dated *Burstein*.